Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of JAMES LAWSON, Respondent, for Compensation under the Workmen's Compensation Law, v. WALLACE & KEENEY, Employer, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Appellants.

Third Department, July 6, 1922.

Workmen's Compensation Law — purpose of notice of injury — rule as to notice not inflexible and failure to give notice may be excused by State Industrial Board — under Workmen's Compensation Law, § 18, as amended by Laws of 1918, chap. 634, notice may be excused where employer alone not prejudiced by failure to serve and employer alone may admit lack of prejudice — evidence justifying Board in excusing failure to give notice — when receipt of wages does not render award irregular — physician's bill allowed where employer consented to physician selected by employee — reasonable hospital bills — physician's bill for services prior to time employer notified of injury not proper charge — physicians' bills limited to reasonable charge in view of claimant's station in life.

The purpose of the notice of injury required by section 18 of the Workmen's Compensation Law is to permit an early investigation of the circumstances of the accident by the employer and to give opportunity to furnish prompt medical service to the claimant in order to prevent serious disability.

The rule as to notice is not inflexible. The Legislature has aimed to do justice to a fair claim, notwithstanding failure to comply with the notice rule, where the claimant for some sufficient reason could not give notice, or where the employer knew of the accident at the time in another way, or where the employer has not been prejudiced by the failure to give notice, and in such cases the failure to give notice may be excused by the State Industrial Board.

The amendment to section 18 of the Workmen's Compensation Law by chapter 634 of the Laws of 1918 changed the law so that now prejudice to the employer alone is considered and the employer alone may admit lack of prejudice, which admission may be considered by the Board in determining lack of, prejudice as an existing fact. The Legislature has taken away from the insurance carrier any right to object on the ground of its own prejudice, and the carrier may only raise the point that the employer has been prejudiced.

Satisfactory evidence of an injury to an employee which was not known to him to be more than a slight bruise for months after it was received, the serious consequences of which probably could not have been avoided by medical treatment, however prompt and thorough, together with the facts that the employer took the attitude that compensation should be paid and admitted that it had not been prejudiced by the failure to serve the statutory notice, justified the Board in excusing the failure to give notice on the ground of lack of prejudice to the employer.

The receipt by a claimant of his regular wages during a portion of the period of the award does not render the award irregular, where the award is only a preliminary one and there is ample margin by which the insurance carrier is protected in the amount awarded.

The bill of a physician who treated the claimant should be included in the award where it appears from the evidence that, although the claimant selected the physician, it was with the consent of the employer.

Hospital bills, *held*, under the evidence to be reasonable in amount.

The bill of a physician for services rendered prior to the time when the employer was notified of the injury is not a proper charge.

Physicians' bills must be limited to what is reasonable in view of the claimant's station in life and must be supported by proper evidence.

APPEAL by the defendants, Wallace & Keeney and another, from a decision and award of the State Industrial Commission, made on the 11th day of April, 1921, and from a decision and award of the State Industrial Board made on the 13th day of September, 1921.

*William Warren Dimmick*, for the appellants.

*Wing & Wing*, for the claimant, respondent.

*Charles D. Newton*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the State Industrial Board.

HINMAN, J.:

Two questions are involved upon this appeal — the question of notice and the question of allowance of medical and hospital bills.

The claimant worked as a salesman for a wholesale fish merchant. On or about June 10, 1919, while taking down a box of fish it fell and struck him on the left leg above the knee which he put up in trying to save the box from hitting the ground. One of his co-employees was coming in at the time to whom the claimant said: " Geé, Joe, I guess I got it this time," to which Joe replied, " I guess you have." Claimant says: " I walked around limping and just kept rubbing it this way [indicating] and I walked around and business got slack and I looked at it and it was just a red spot there and did not amount to much, and when I went home we tried old home remedies and rubbed it with liniments, and that helped it for two or three days; and I felt fine until about around August and September and then the leg began to bother me." Claimant then went to see his family physician, who was a woman. She had treated him before for rheumatism following an attack of typhoid fever, which he had had about eight years before. Owing to his apparent recovery from the bruise received a couple of months before it did not occur to him to mention the accident, nor did his physician question him as to whether he had sustained an injury to the leg. She continued to treat him for rheumatism until the last of December but the leg kept getting worse and she finally sent him to an eminent surgeon. Until the claimant saw this surgeon he never thought of his trouble being due to the accident.

This surgeon says that claimant " had an abscess deep in his thigh which had worked its way to the top slowly." The abscess was at the point where the box struck the leg and the claimant had never received any other bruise or bump in that portion of his leg. Upon examining him the surgeon asked claimant whether he could remember when he had been hurt and claimant was then reminded of the falling of the box in June and of his having rubbed his leg with liniment. The fact of the accident as well as the time of its happening is confirmed by testimony of a co-employee who was present when it happened. It was January 2, 1920, when the claimant was examined by this surgeon and first learned of this serious injury resulting from his accident on June tenth. Claimant immediately notified his employer, and the employer on January 7, 1920, made a report of the injury and in writing to its insurance carrier, accompanied the report with a letter reviewing the history of the case and exhibiting an interest in obtaining a recovery for the insured party. On the day on which this report was mailed claimant was operated upon by the surgeon who at that time opened and drained the abscess. He did not recognize at that time that there was any immediate communication with the bone. On the nineteenth of April following another operation was performed for chronic osteomyelitis. The surgeon says that nobody knew what was the cause of the trouble until they X-rayed it, operated on it and found it and it was not really known until the second operation. He found that a blood clot formed from the bruise and that was the cause of the infection which resulted. The surgeon says: " in my opinion this case is one of chronic osteomyelitis, latent and causing intermittent ' rheumatic' symptoms for about eight years. On this condition was superimposed the injury described by patient, which is the exciting cause of his disability." He illustrates what he means by " the exciting cause " by saying that " the predisposing cause of an explosion is the man who sets the mine, and the exciting cause is the man who sets it off." He says that a more or less inactive, rather dormant, bone infection frequently results from typhoid. Dr. Lewy, who was present when the surgeon testified, concurred with him, adding as his opinion that what the claimant's first physician called rheumatic pains " were the result of this low grade infection, and the injury or immobilized hæmatoma, which became infected as a secondary matter, caused the pus to form." The following appears in the testimony of the surgeon under examination by Commissioner Sayer: " Q. Assuming the patient to have had this low grade underlying infection of the bone and received a trauma of this kind, the kind that has been testified to here, such as the history

you got, would early treatment have made much difference? A. I believe it would have perhaps made a difference in this: At the time I incised this abscess which I found and did not make particularly thorough search for the communicating canal because of the rather active infection which we had to deal with — if I had opened this hæmatoma before it became actively infected, earlier after the injury, it is possible that might have been found, on the other hand, I doubt whether we would have looked for it. Q. Would there be indication to open it? A. That's it exactly — I don't think the indication would be clear to open it. Dr. Lewy: Absolutely right; the local indication would not be indicative of operative procedure, and possibly if there was a fluctuating mass and diagnosed as a non-infection, or a non-infectious matter, the surgeon would not cut it. Dr. Jennings: Exactly. Dr. Lewy: I don't think any time was lost. In the first place, it was not an acute virulent condition." Dr. Lewy also expressed the opinion that where a man sustained such a blow as this on the leg and limped around for a few moments and then went back to his work, his leg being a little red where the box struck him, and in three or four days the resulting soreness and lameness wore off upon the application of liniment, he would not find indication for either an operation or an X-ray.

At first the claim was disallowed on claimant's statement that he did not notify his employer until after the expiration of thirty days after the accident. Subsequently the case was reopened upon the application of the employer to the Commission in the form of a letter dated October 4, 1920. In this letter the employer refers to the fact that it had received notice of the decision of the Commission to the effect that the claim was disallowed on account of notice not given to employer within the statutory time. The letter states: " In this particular case the injury was not known to Lawson at the time it occurred. It appeared to him to be nothing more than a bruise. A heavy box struck him on the leg, between the knee and the thigh, and he thought nothing more of it. Two or three months afterward he began to be troubled with what appeared to be rheumatism in his knee and it was only after a considerable time later, through the diagnosis of a very eminent specialist, that it became apparent that his trouble resulted from this accident. He was taken to a hospital and several operations resulted, and only after strenuous efforts and most careful attention it now appears that his leg may be saved. * * * As soon as the diagnosis showed the cause of his trouble, a report was at once made to us and we in turn reported to the insurance company. We have been paying compensation insurance for a long while

and have never had a claim before. It does seem outrageous that nothing has been done for this man, as this is one of the cases that, obviously, compensation insurance is meant to cover. We are writing to ask you, in the interest of this most deserving and most unfortunate young man, whether or not this case cannot be opened and a more careful and proper consideration be given it."

When the case was up for rehearing the president of the employer appeared both as attorney and employer and asked that the failure to give notice be excused " on the ground that the accident was not apparent as an accident until several months afterwards," stating that in their wholesale fish market the men were accustomed to do their work in a rush and " never a day goes by but what many of them receive a bruise or scratch," and " that they think nothing of. * * * It would be impossible to report every bruise — every little knock that a man gets there. It is impossible to work there without it."

Upon the question of notice we have an attitude on the part of the employer which is unusual, if not unique. We have the employer itself urging that the failure to give notice be excused on the ground that " notice for some sufficient reason could not have been given," the sufficient reason being that the claimant himself did not know of his injury until he was informed by the surgeon and, therefore, could not have given notice of the injury, which he regarded as very trivial at the time, in a business where slight bruises were a common, every day occurrence, a very minor accident, leaving no apparent trace of injury after two or three days, following which claimant " felt fine " until two or three months later when his leg began to bother him and he went to a physician. This of course was subsequent to the thirty-day period following the accident. The employer was evidently satisfied beyond doubt that the claim was made in good faith and that the accident had occurred as narrated by the claimant and as supported by the testimony of his co-employee. Commissioner Sayer, who heard the claimant testify, was likewise convinced that it was a meritorious case. He states: " The accident I think is sufficiently established. The claimant's testimony is clear and frank. He is a very honest appearing young man. His story is corroborated by a fellow workman."

The purpose of notice is to permit an early investigation of the circumstances of the accident by the employer and to give opportunity to furnish prompt medical service to claimant to prevent serious disability. Section 18, requiring notice within thirty days after the accident, is a fair provision of the statute, since the employer is required to provide compensation for injury

to his employees without regard to fault as a cause thereof. (See Workmen's Compensation Law, § 10.) It is a safeguard against imposition by dishonest and irresponsible claimants who, in the absence of the requirement, would make the burden of the system intolerable. The rule is not inflexible, however, and the Legislature has aimed to do justice to a fair claim, notwithstanding failure to comply with the notice rule, where the claimant for some sufficient reason could not give the notice, or where the employer knew of the accident at the time in another way, or where the employer has not been prejudiced by the failure to give notice. The State Industrial Commission (now Board), which alone has the power to excuse the failure on one or more of these grounds, has not excused in this case on the ground that notice could not have been given but solely on the ground of lack of prejudice.

The facts of this case justify the holding of the Board that the employer was not prejudiced and that the failure to give notice was excusable on that ground. The cases of *Sicardi* v. *Sarnoff Hat Co., Inc.* (176 App. Div. 13); *Bloomfield* v. *November* (180 id. 240; 219 N. Y. 374; 223 id. 265); *Dorb* v. *Stearns & Co.* (180 App. Div. 138); *Andrews* v. *Butler Mfg. Co.* (184 id. 698); *Matter of Hynes* v. *Pullman Co.* (223 N. Y. 342); *Matter of Combes* v. *Geibel* (226 id. 291), relating to prejudice against the insurance carrier, are no longer directly in point. At the time those cases were decided section 18 of the Workmen's Compensation Law provided that the failure to give notice might be excused " on the ground that the State Fund, insurance company, or employer, as the case may be, has not been prejudiced thereby." By an amendment of that section by chapter 634 of the Laws of 1918, the words " State Fund, insurance company or " and the words " as the case may be " were stricken out so that there remains only lack of prejudice of the " employer " to be excused.

The word " employer " is no longer used in this connection in the sense of merely an employer who is a self-insurer, as was held to be the case prior to the amendment of 1918. (*Sicardi* v. *Sarnoff Hat Co., Inc.*, 176 App. Div. 13.) It cannot be that the Legislature meant to relieve for lack of prejudice only in cases where the employer was a self-insurer. The reasoning in *Sicardi* v. *Sarnoff Hat Co., Inc. (supra)* does not apply. The context no longer indicates any such limited use of the term " employer." In the absence of language in the context indicating that a different meaning was intended, the word must be given the meaning attributed to it by the act. (Workmen's Compensation Law, § 3, subd. 3, as amd. by Laws of 1917, chap. 705.) This definition of the term does not include the State fund or the insurance company.

As section 18 existed at the time of the accident in question it was not necessary for the Commission to find facts tending to indicate lack of prejudice on the part of the insurance company. Strange as it may seem the Legislature has taken away from the insurance company directly chargeable with the payment of the compensation any right to object on the ground of its own prejudice. The insurance company may only raise the point that the employer has been prejudiced. We must take the statute as we find it, however, and seek to find the prejudice running to the employer which the Legislature had in mind. Indirectly the prejudice of the employer might lie in the fact that its premiums of insurance, where the employer insures in the State fund, are determinable in accordance with the hazard of each individual risk (Workmen's Compensation Law, § 95), and in the case of an employer who insures otherwise the prejudice might lie in the obligation to pay the compensation in the event of the insolvency of its insurance company. (Workmen's Compensation Law, § 53.) Of course if the employer is a self-insurer the prejudice is direct and certain. While the prejudice of the employer who is not a self-insurer is more remote than that of the insurance carrier, it exists contingently at least and does not differ in quality. It cannot be ignored on the ground that it exists only contingently. There must be appropriate findings by the Commission of such facts, circumstances or conditions, if they exist, as to render proper the conclusion that the employer has not been prejudiced, that his liability, contingent or otherwise, is no greater than it would have been if the required notice had been given. In this respect the amendment of 1918 has not made any substantial change from the interpretation laid down previously by the courts. One significant change results, however. The employer alone may now admit lack of prejudice, where it is satisfied from its own investigation of the circumstances of an accident that the claim is a *bona fide* claim and that the obligation has not been increased by delay in medical treatment which otherwise might have been afforded. It must be assumed that the Commission will not be bound by any such admission but may consider it in determining lack of prejudice as an existing fact.

The reopening of this case upon the application of the employer after notice of its rejection on the ground of failure to give notice, the letter of the employer treating the denial of the benefits of compensation as outrageous, the attitude of the employer in appearing through its president at the rehearing in behalf of the claimant and urging that the failure to give notice be excused, was evidence that the Commission could consider in reaching the

conclusion that the employer had not been prejudiced. (*Anthus* v. *Rail Joint Co.*, 193 App. Div. 571; affd., 231 N. Y. 557.)

The attitude of the employer is confirmed by the other facts in the case. The claimant apparently recovered from what he honestly believed to be a trivial injury received in a business where slight bumps and bruises were the common occurrences of the day. The fact of the accident is confirmed by the testimony of a fellow-employee. The employer exhibits no doubt as to the fact of the accident and of the secondary injury as a natural and unavoidable consequence. There was no indication for medical attention to such secondary injury during the thirty-day period. There is also medical testimony tending to indicate that nothing could have been done which would have changed the result. These facts are sufficient to uphold the finding of the Commission that the employer and in fact the insurance carrier had not been prejudiced by excusing the failure to give notice.

The appellant claims that the award in this case is irregular for the reason that the claimant received payment of his regular wages during at least a portion of the period of the award. The finding of the Commission, however, is that there was a loss of from one-third to one-half of the leg. The award in question is merely a preliminary award made for about sixty-five weeks and the claim continued. The award for one-third of a leg would be ninety-six weeks,* so that there is ample margin by which the insurance carrier is protected in the amount now awarded.

The appellant insurance carrier also contends that the Industrial Board had no jurisdiction to award a recovery by the claimant for medical bills on the ground that the employer and insurance carrier did not authorize the medical treatment in this case. It appears, however, that before having Dr. Jennings operate upon him, the claimant communicated with Mr. Cornell, the president of the employer, who went to the hospital to see him and discussed with him what was proposed being done with his leg. The employer had the right to consent to the employment of a physician selected by the employee. While there is no testimony directly to the effect that the employer did consent, it is a fact which may be inferred from the circumstances. Moreover the question raised by the carrier at the hearing with reference to the medical bills was simply whether the bills were reasonable and fair. There was sufficient testimony to justify the hospital bills as reasonable in amount. It appears also from the testimony of the doctor called

* See Workmen's Compensation Law, § 15, subd. 3, as amd. by Laws of 1917, chap. 705. Since amd. by Laws of 1920, chaps. 532, 533. Entire statute is now Consol. Laws, chap. 67; Laws of 1922, chap. 615.— [Rep.

by the insurance carrier that Dr. Jennings' reputation is of the very highest and that he would regard Dr. Jennings' charges as reasonable for a man in good circumstances. He testified, however, that the charges of Dr. Jennings were not fair and reasonable in the light of the claimant's station in life and there seems to be no testimony in the case indicating to the contrary. Section 13 of the Workmen's Compensation Law (as amd. by Laws of 1918, chap. 634) requires that limitation to be placed upon allowances for medical services. Moreover, the bill of Dr. Peebles is likewise unsupported by the necessary testimony. The bill of Dr. Peebles for services rendered prior to the time when the employer was notified of the injury is not a proper charge. For the purposes of an award in this case her bill must be limited to a reasonable charge in the light of claimant's station in life for such services as were rendered by her in the dressing of the leg after the operations when the case was placed in her charge during the absence of Dr. Jennings.

The award should be affirmed with the exception of that portion thereof which relates to the medical bills of Dr. Jennings and Dr. Peebles, to which latter extent the award should be reversed and the claim remitted to the State Industrial Board for further consideration thereof.

All concur.

Award unanimously affirmed, with the exception of that portion thereof which relates to the medical bills of Dr. Jennings and Dr. Peebles, to which latter extent the award is reversed and the claim remitted to the State Industrial Board for further consideration thereof. No costs.