(No. 6890.   November 3, 1941)

ORA V. EPPERSON, as Administratrix of the Estate of DEWIE ARTHUR EPPERSON, Deceased, Appellant and Cross-Respondent, v. TEXAS-OWYHEE MINING & DEVELOPMENT CO., Employer, and STATE INSURANCE FUND, Surety, Respondents, and DR. W. A. KOELSCH and NATIONAL SURE-

TY CORPORATION, Respondents and Cross-Appellants.

(118 Pac. (2d) 745)

Rehearing denied Nov. 24, 1941.

Carroll F. Zapp and E. B. Smith, for Appellant and Cross-Respondent.

James F. Butler, for Respondents and Cross-Appellants.

B. W. Oppenheim, for Respondent, Texas-Owyhee Mining & Development Company, filed no brief.

Clarence L. Hillman, for Respondent, State Insurance Fund.

BUDGE, C.J.—The following statutes provide:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or be requested by the employee immediately after an injury, and for a reasonable time thereafter. * * * * The pecuniary liability of the employer for the treatment and other service herein required shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person. * * * *" (Sec. 43-1107, I. C. A.)

"Nothing in this act shall be construed as preventing employers and workmen from waiving the provisions of section 43-1107 and entering into mutual contracts or agreements providing for hospital benefits and accommodations to be furnished to the employee.

"Such hospital contracts or agreements must provide for medical, hospital and surgical attendance for such employee for sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication), as well as for injuries received arising out of and in the course of the employment." (Sec. 43-1108, I. C. A.)

"Before approving any hospital contract or agreement,

the individual corporation or association agreeing to furnish to the employees of any employer of the State of Idaho medical, hospital and surgical attendance provided for in section 43-1108, the board may, in its discretion, require such individual, corporation or association to file with the board a surety bond in the penal sum of $5000 conditioned that such individual, corporation or association will faithfully furnish to such employees the medical, hospital and surgical attendance agreed to be furnished in such contract and agreement and required to be furnished by section 43-1108." (Sec. 43-1109, I. C. A.)

January 15, 1938, pursuant to Sections 43-1108 and 43-1109 I. C. A., the Texas-Owyhee Mining & Development Company (hereinafter referred to as the 'Mining Company') and W. A. Koelsch, M.D. (hereinafter referred to as 'contract doctor') entered into a Hospital contract, which was filed with the Industrial Accident Board on January 20, 1938, and approved on January 21, 1938.

Said contract provided, inter alia, that the contract doctor would provide to each and every person employed by the Mining Company who elected to receive the benefits of the agreement and contributed to the contract doctor, all necessary and reasonable medical, surgical and hospital attendance, medicines, nursing, crutches and apparatus, which were to be furnished at the St. Luke and St. Alphonsus hospitals, which the contract doctor, as recited in the contract, was conducting.

It is likewise provided that the contract is to be in conformity with and in pursuance of the Workmen's Compensation Act of the State of Idaho, effective January 1, 1918, and amendments thereto and in lieu of the provisions of Section 6229, Compiled Statutes of 1919 (now Sec. 43-1107, I. C. A.).

The contract provides:

"1. For sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication).

2. For injuries received arising out of and in the course of employment, and

3. For other injuries received during the employment

of such persons by the party of the second part, save and except injuries caused by an employe's wilful intent to injure himself or to injure another, or by his intoxication, or due to personal difficulties or to unlawful acts done or attempted."

"Such medical and surgical care shall be held to include such reasonable care as may be required immediately after the development of a sickness or after an injury, and for a reasonable time thereafter, and such hospital attendance and nursing shall be held to include hospital care and nursing in the above hospital or elsewhere only for such conditions and for such length of time as may be reasonably necessary for the proper treatment of the conditions presented, and such care shall be held to include an ambulance or other proper conveyance furnished by the party of the second part whenever required to convey the sick or injured from all points within the city limits of Placerville, Idaho to a hospital, or such proper place for the reception, care and treatment of sick or injured, * * * . The refusal of an employe to consult with the surgeon of the party of the first part, or to comply with instructions as to treatment or the employment by the employe of treatment or care not authorized by the party of the first part shall be considered as a waiver of his rights to, and shall disqualify him from further benefits for that condition or its complications."

The contract further provides that the Mining Company shall deduct, withhold, and collect the sum of One Dollar per calendar month from the wages of each of its employees who elects to receive the benefits of the contract, and lesser amounts depending upon the length of the employment of the employee. It also provides for its determination upon the giving of notice as stipulated therein, and for other matters not material to a decision of this case.

The contract above mentioned was filed with and approved by the Board. An agreement was entered into by the Mining Company and its employees, whereby the employees waived Section 43-1107 and accepted the terms and conditions of the contract entered into between the contract doctor and the Mining Company. The agreement

was signed and entered into by Dewie Arthur Epperson (hereinafter referred to as 'decedent') on January 27, 1938.

September 7, 1938, decedent, being then an employee of the Mining Company, was treated by the contract doctor under the provisions of the hospital contract.

November 21, 1938, decedent was injured by accident arising out of and in the course of his employment by the Mining Company. There is evidence in the record that when the decedent workman was hoisted to the surface of the mine in which he was injured he requested that he be taken to the St. Alphonsus hospital and that he be permitted to secure the services of "his own Doctor"; that he reiterated this request once during the course of the trip from the mine to the hospital. The record further discloses that pursuant to decedent's request, and after his arrival at the hospital, he stated to one Mutch that he desired that Dr. Robert Smith be employed to attend him; that Drs. Falk and Smith, associates in the practice of medicine, were thereupon called to attend decedent, and proceeded to make further arrangements for hospital and nursing services, and rendered to decedent surgical and medical treatment.

Neither the hospital nor the Mining Company notified the contract doctor that the injured workman, decedent, had been placed in the hospital. However, the next morning, November 22, 1938, the contract doctor learned, for the first time, through the press and upon inquiry at the hospital that decedent was injured and at the hospital under the care of Drs. Falk and Smith, but he did not offer his services to decedent and did not inform Drs. Falk and Smith that decedent was a hospital contract case until after decedent died on November 24, 1938.

July 26, 1939, Ora V. Epperson, widow of decedent (hereinafter referred to as 'claimant') was appointed Administratrix of the estate of decedent, by the Probate Court of Adams County, and thereafter initiated this proceeding against the Mining Company and its surety, the State Insurance Fund, and against the contract doctor and his surety, the National Surety Corporation, in an attempt to recover expenses incurred for medical,

hospital and surgical attendance, and for drugs and medicines administered to decedent.

It may be well to call attention to the fact that payment of compensation to the widow and dependents is not involved and not in issue here. The State Insurance Fund accepted liability for compensation and funeral expenses and has paid the same as it became due.

The Board concluded that by virtue of the hospital contract and the agreement heretofore referred to, neither the Mining Company nor its surety, was liable for any of the expenses herein sought to be recovered; but that the contract doctor and his surety were liable for the medical expenses except for such as may have been waived by decedent; that decedent, by reason of his employment of Drs. Falk and Smith, with knowledge of the available services of a physician and surgeon, namely, the contract doctor, waived the benefits of the hospital contract providing for the services of a physician and surgeon, and that for the services of Drs. Falk and Smith, decedent's estate was liable and that the reasonable value of the services rendered by Drs. Falk and Smith was $250. The claim filed by the aforementioned Drs. Falk and Smith was for $460. The Board concluded that the contract doctor and his surety were jointly and severally liable to the claimant for the following necessary hospital, nursing and medical treatment, St. Alphonsus hospital, $119.15; nursing in the total amount of $47.50; serums and drugs, $92.50; anaesthetics, $10; totaling in all $269.15, and made an award against the contract doctor and his surety in said amount, payable to the claimant.

In other words, the Board concluded that neither the employer and his surety, nor either of them, were liable in any amount, or at all, and entered an order of dismissal; and that the contract doctor and his surety were not liable for any medical and surgical services, but were liable for hospitalization, anaesthetics, nursing, drugs, serums, et cetera, in the sum of $269.15.

Claimant appealed from the denial of recovery for medical and surgical expenses incurred in the necessary treatment of decedent. The contract doctor and his

surety appealed from the award of the Board against them in the sum of $269.15.

The following questions are here for determination. First, who is liable for the hospitalization, nursing, anaesthetics, drugs, serums, etc.? Second, who is liable for the medical and surgical services of Drs. Falk and Smith? Third, was the $460 charged by Drs. Falk and Smith for their medical and surgical services rendered to decedent, a reasonable charge, or was the $250, as found by the Board, a reasonable charge?

We will first undertake to determine whether the Mining Company and its surety, the State Insurance Fund, are jointly and severally liable to claimant for medical, hospitalization and surgical services furnished and rendered decedent from November 21, 1938, the date he entered the hospital to November 24, 1938, the date he died.

It is not disputed that the accident and injury to the decedent arose out of and in the course of his employment, and was compensable and, had it not been for the hospital contract, the Mining Company and its surety would have been solely liable. However, it seems to be well settled that an employer, who makes provisions, by a hospital contract which incorporates the provisions of the Workmen's Compensation Act, for reasonable medical, surgical and hospital treatment for sick and injured employees, is not liable for expenses incurred by such employees in procuring hospital, medical and surgical services other than that provided for in the contract. (Sec. 43-1107, I. C. A.)

In *Myers v. Industrial Accident Commission et al.*, 191 Cal. 673, 218 Pac. 11, 13, that court in discussing a statute similar to Sec. 43-1107, supra, says:

"The intent of this provision is that the employer shall, in the first instance, have the right to designate and select the physicians who are to give treatment to the employee. The latter is authorized to make his own selection at the expense of the employer only where the employer has neglected or refused to provide the necessary service." To the same effect see, *Arneson v. Robinson*, 59 Idaho 223, 83 P. 2d 249; *Totton v. Long Lake Lumber*

*Company, et al.,* 61 Idaho 74, 97 P. 2d 596; *Horn v. Elm Branch Coal Co.,* 141 Kan. 518, 41 P. 2d 751.

In *Goatman v. Pacific Ready-Cut Homes Inc., et al.,* 112 Cal. A. 397, 297 Pac. 68, 70, it is said:

"It requires but little citation to support the rule that, where the principal is discharged, the surety likewise escapes liability." (Citing cases.)

An examination of the provisions and stipulations of the hospital contract discloses that it is within the requirements of the Workmen's Compensation Law, and that, therefore, under the authorities above cited, the Mining Company and its surety, the State Insurance Fund, are relieved of all liability to claimant for hospitalization, medical and surgical treatment, et cetera.

Coming now to the question of the liability, if any, of the contract doctor and his surety, the National Surety Corporation.

The contract doctor and his surety predicate their nonliability mainly upon the provisions of the contract wherein it is provided that the refusal of an employee to consult with the surgeon or contract doctor, or to comply with instructions as to treatment, *or the employment by the employee of treatment or care not authorized by the contract doctor shall be considered as a waiver of his rights to and shall disqualify him from further benefits for that condition or its complications.*

Decedent was delivered to the St. Alphonsus hospital and Dr. Smith called by the Superintendent of the hospital at decedent's request. Drs. Falk and Smith did not know that decedent was a hospital contract case until after he died, when the contract doctor gave them that information. The contract doctor did not offer his services on learning that decedent was under the care of Drs. Falk and Smith, and informed the hospital employees that "as long as he [decedent] wasn't under my care I wasn't responsible—We were not responsible."

Under the terms of the hospital contract, if we understand it correctly, the hospital was the agent of the contract doctor, with authority to act within the scope of its agency. The delivery of decedent to the hospital was delivery to the contract doctor. Also, the failure of the

hospital to notify the contract doctor of the presence of the deceased in the hospital would not relieve the contract doctor of all liability, and whatever liability was incurred by the hospital would be incurred by the contract doctor. Furthermore, if decedent employed surgical treatment or care not authorized by the contract doctor, the contract provided that the injured workman, decedent, thereby disqualified himself and waived his rights to the services of the contract doctor. When decedent directed one Mutch to call Doctor Smith, and Mutch instructed the Sister in charge of the hospital to call Doctor Smith, the hospital being the agent of the contract doctor, it was equivalent to a waiver of the services of the contract doctor. In other words, whatever directions were given by decedent to the hospital, agent of the contract doctor, were given to the contract doctor.

The fact that the Mining Company failed to notify the contract doctor that decedent had been taken to the St. Alphonsus hospital, would not under the terms of the contract relieve the contract doctor or his surety from such liability as provided for in the contract, except for such as may have been waived by decedent.

It would seem that the contract doctor and his surety would be clearly liable under the contract for the $269.15 for hospitalization, nursing, anaesthetics, serums, and medicines, as found by the Board.

If decedent employed Drs. Falk and Smith without authority of the contract doctor and in violation of the terms of the contract, the contract doctor would not be liable for medical and surgical services rendered by Drs. Falk and Smith unless it was his duty under the terms of the contract to offer his services and accommodations to the injured workman as a condition precedent to relieving himself from liability under the contract.

The Board found, in its findings of fact, that decedent employed Drs. Falk and Smith to render him medical and surgical treatment.

The evidence is undisputed that the injured workman, decedent, when raised to the surface of the mine wherein he was injured, was conscious; that he was conscious during the time he was being conveyed from the mine to the

hospital; that he was conscious when he directed that Dr. Smith, "his own doctor," be called to attend him.

It is true that he was seriously and fatally injured, and in a state of shock, but nevertheless, he was fully in possession of his mental faculties when he directed that Dr. Smith be called.

The decedent had knowledge of the existence of the hospital contract; that Dr. Koelsch, the contract doctor, was the doctor provided for in the hospital contract; that the St. Alphonsus hospital was the hospital to which he was to be conveyed; and, as heretofore stated, he had received treatment from the contract doctor as provided for in the hospital contract.

We therefore think there is sufficient competent evidence to support the finding of the Board as heretofore referred to.

Coming now to the question of the reasonableness of the charges for medical and surgical services rendered by Drs. Falk and Smith. For their services they filed a claim for $460, and offered testimony in support of its reasonableness. The contract doctor testified that certain items, making up the claim, were unreasonable and excessive. Therefore, there was a direct conflict as to this point. The Board, with the conflicting evidence before it, reduced the claim from $460 to $250, concluding that the latter amount was reasonable.

Section 43-1502, I. C. A., provides: "claims * * * * of physicians for services under this act shall be subject to the approval of the Board."

"On appeal, where there is a substantial conflict in the evidence as in the case at bar, the findings of the Industrial Accident Board will not be disturbed." *Golay v. Stoddard,* 60 Idaho 168, 173, 89 P. 2d 1102; To same effect, see, *Delich v. Lafferty Shingle Mill Co.,* 49 Idaho 552, 290 Pac. 204; *Ramsay v. Sullivan Mining Co.,* 51 Idaho 366, 6 P. 2d 856; *Larson v. Callahan Canning Co.,* 53 Idaho 746, 27 P. 2d 967; *Vaughn v. Robertson & Thomas,* 54 Idaho 138, 29 P. 2d 756; *Liberg v. Genessee Union Warehouse Co.,* 55 Idaho 123, 38 P. 2d 999; *Rand v. Lafferty Transportation Co.,* 60 Idaho 507, 92 P. 2d

786; *Knight v. Younkin,* 105 P. 2d 456, 61 Idaho 612; *Deline v. Industrial Commission,* (Colo.) 116 P. 2d 916.

"Where, as here, there is sufficient competent evidence to support the finding and award of the board this court will not disturb the same." *Watkins v. Cavanaugh,* 61 Idaho 720, 107 P. 2d 155.

Unless we can hold that there is no competent or material evidence to support the Board's conclusion, that $250 is a reasonable charge for the services rendered by Drs. Falk and Smith; or that the Board arbitrarily and capriciously disregarded competent, material and substantial evidence as to the reasonableness of the claim in question, we are without authority to disturb the conclusion reached by the Board, whatever our individual views may be.

It follows from what has been said, that the conclusions reached by the Board must be sustained.

Givens and Ailshie, JJ., and Buckner, Dist. J., concur.

Morgan, J., deeming himself disqualified, Buckner, D.J., sat in his place.

HOLDEN, J., Dissenting in part and concurring in part.

Insofar as the foregoing opinion holds that by reason of the making of the hospital contract, and its approval by the board, the mining company and its surety, the State Insurance Fund, are relieved of all liability to claimant, I dissent.

I concur in holding the contract doctor and his surety liable for hospitalization, nursing, anaesthetics, serums and medicines, as found by the board. I further concur in holding decedent waived the services of the contract doctor, placing my concurrence in that respect · upon the ground the instructions given by decedent to the agent of the contract doctor (the agent being the alter ego of its principal) to call another doctor were equivalent to directing the contract doctor himself to call Dr. Smith. My concurrence on this last point is based on *Totton v. Long Lake Lumber Co.,* 61 Idaho 74, 97 P. 2d 596.