170 P.2d 605

LESCINSKI v. POTLATCH FORESTS, Inc. et al.

No. 7269.

Supreme Court of Idaho.
June 28, 1946.

Paul C. Keeton, of Lewiston, and William D. Keeton, of St. Maries, for appellant.

Robert H. Elder and R. N. Elder, both of Coeur d'Alene, for respondents.

AILSHIE, Chief Justice.

During November and a part of December, 1943, Joe Lescinski (appellant herein), a married man with two dependent children, was working for respondent, Potlatch Forests, Inc., on the logging railroad near Elk River. When entering his employment, Appellant elected in writing to waive the provisions of the Workmen's Compensation Law, Code 1932, § 43-901 et seq., providing for medical attendance and hospital service; in lieu thereof, he elected to accept and receive the benefits of a hospital contract existing between his employer and the Western Hospital Association.

November 24th, as a part of his work, appellant was carrying shims through the brush. A shim is a chunk of wood "to put at the bottom of the [railroad] ties in the mud"; when laying railroad track, "it gets soft and you have to push it up to get over it." Cedar wood is generally used, because it splits easily. As appellant bent the brush, pushing the shims through, "the leaves of the cedar" hit him in the left eye. The eye started to hurt but he continued to work until December 18th, when he quit work and went to his home in Bovill. (In riding in the truck from his work to Elk River, he had taken a cold.) December 21st he drew his wages from the company's office, at which time the office manager asked him why he was quitting but appellant didn't give any reason; the manager tried to get him to go back to work but appellant would not do so. Asked about this later, Lescinski admitted that at that time he intended to come back to work; he thought his eye was "going to be O. K." He made no complaint to his employer of injury or disability on account of injury; nor did he call at the company hospital or on the company's physician, Dr. Gibson.

Appellant attempted to treat his eye at home; he put some packs on it to relieve it. In January his eye became worse and he consulted Dr. Wilson in Moscow and, at the doctor's advice, went to the Gritman Hospital there for treatment, where he remained five days, leaving there January 18th for his home. While at the hospital his eye was treated with hot and cold boric acid compacts and argyrol solution. Dr. Wilson informed him that the eye would "have to come out." When asked whether he knew he had a right to have treatment at Dr. Gibson's hospital (the company's physician and hospital), appellant answered: "I don't want to go to Dr. Gibson. He is too mean * * *. He keep talking to you like a dog." He referred to the time he had cut his hand, making fence posts, and consulted the doctor.

February 3, 1944, appellant was admitted to the Veterans Hospital at Boise, where, according to Dr. Kimelman, surgeon and physician,

"The patient [Lescinski] states that after being in the wind he came home with a slight pain in his left eye, a few hours later the pain became unbearable, the left side of the head also ached; he lost his

sight overnight; he saw M. D. who treated him with compresses and 'shots' with no relief; he then came here for treatment."

On examination the doctor's "diagnostic impression" was "acute glaucoma". On the same date Dr. Cowles was called in as consultant and performed an enucleation of appellant's left eye. The doctor testified to the patient's giving him practically the same information regarding his eye as quoted above. The statement was denied by appellant, however. Dr. Cowles testified that there were no signs of injury to the external eye. Testimony of Dr. Thompson (called in by Dr. Wilson) also disclosed "no blemish" on the cornea of appellant's eye. According to Dr. Cowles, the loss of appellant's eye was "due to a complicated cataract" ; "It would take several years for a cataract to be mature like it was." When asked the question as to whether the cataract might be advanced from trauma which occurred on the 23d of November, Dr. Cowles stated: "traumatic cataract could get to a mature stage like that from an injury of that date, yes."

Drs. Arthur C. Jones and R. L. Nourse were called in to testify to hypothetical questions regarding the condition and treatment of appellant's eye. Dr. Jones, in speaking of appellant's injury had this to say:

"If the man had a severe injury on the 24th of November, it certainly should have given evidence before the 18th of December, and if it didn't give any evidence before that time, I wouldn't think that the brushing of the leaves into his eye would have precipitated his glaucoma. He wasn't seen by a doctor until the 12th of January. Early in the game I would think there would have been plenty of evidence if it was severe enough to cause glaucoma. * * * if he had been suffering with this eye for nearly a month that he would at least have spoken to somebody about it. * * * I mean that is just common sense, if a man is injured. * * * If he had an injury that caused a panophthalmitis ['inflammation of all the structures or tissues of the eye'] he would be incapacitated almost immediately."

In answer to the question, "In your experience, it [glaucoma] does come from injury some times?" Dr. Jones replied: "A. Yes, I have seen it come from injury." No further information was brought out by Dr. Nourse's testimony.

April 27, 1944, notice of injury and claim for compensation was filed by appellant. As to the "Nature and Extent of Injury", shown on the blank, it was stated that appellant "Lost left eye—accident was not reported when Mr. Lescinski quit so we did not send him to any Dr."; that he was "permanently" disabled.

October 30, 1944, application and petition for hearing was filed with the Industrial Accident Board. Hearings were had before Commissioner Suppiger of the Board, March 15th, 1945, at Moscow, and May 1st, '45, at Boise; and findings of fact,

rulings of law and order were entered by him June 8th, denying and dismissing appellant's claim and application for compensation. These findings, rulings and order were approved and confirmed by the Board on the same date. Claim for review of the findings was filed by the claimant's counsel and the Board's findings were reviewed July 5th following. August 14th the Board again made its findings of fact, rulings of law and order on review, and the claim and application of appellant was denied and dismissed. From the latter award or order of the Board, claimant appeals.

The evidence in the case, as to the direct cause of the injury and giving notice to the employer, is conflicting. The Board found in favor of claimant on the issue as to the *cause* of the injury, so there is no issue before the court on that question. The Board found, however, against the claimant on the issue of notice to the employer and the question of lack of notice being prejudicial to the interests of the employer. The findings by the Board on these various issues are as follows:

"V. That about April 9, 1944, claimant returned to Bovill. That between the 18th day of December, 1943, and the 10th day of April, 1944, the claimant was totally disabled for work on account of the condition of his eye. That the claimant's condition was the result of a scratch received in his eye from the said cedar bough.

"VI. That the claimant did not notify the employer, Potlatch Forests, Inc., of his injury until on or about the 8th day of May, 1944, on which day he made a claim in writing for compensation on account of said injury.

"VII. That no agent or officer of the employer, Potlatch Forests, Inc., and that no agent or officer or representative of the employer in charge of the business or work where the accident occurred had any notice or knowledge of the said accident or injury.

"VIII. I further find that the claimant did not talk with Chet Yangel about said injury before the claimant went to the Veterans Hospital at Boise, Idaho, and did not talk with Chet Yangel about said accident until some time in the month of April, 1944, when the claimant told Chet Yangel that he had lost his eye.

"IX. I further find that if the claimant had notified Chet Yangel, or any other member, agent, or officer of the Potlatch Forests, Inc., of said accident and injury he would immediately have sent to the hospital of the Western Hospital Association under the above mentioned hospital contract for treatment. By reason of the failure to give notice of said accident and the injury resulting therefrom, the Potlatch Forests, Inc., has been prejudiced, in that, by said lack of knowledge or notice it was deprived of the opportunity of furnishing the claimant with timely, necessary and proper medical attendance.

"X. I further find that by reason of the claimant's failure to give notice the Potlatch Forests, Inc., was deprived the op-

portunity of making an investigation of the facts surrounding said accident and injury, to its prejudice."

It will be observed from the findings, that the Board also found that the delay in giving notice to the employer was prejudicial to the employer's interests and that he was thereby deprived of the opportunity of making timely investigation and furnishing hospitalization.

This case is ruled by Frost v. Idaho Gold Dredging Co., 54 Idaho 312, 315, 31 P.2d 270, and Long v. Brown, 64 Idaho 39, 44, 128 P.2d 754.

In the Frost case this court said [54 Idaho 312, 31 P.2d 271]:

"Section 43-1202, I.C.A. requires the employee to give notice to the employer, of the accident, ' * * * as soon as practicable but not later than sixty days after the happening thereof, * * *' of the accident).

"Section 43-1205, I.C.A., provides:

' * * * Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, his agent or representative, had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice.'

"The notice referred to is obviously that mentioned in section 43-1202, I.C.A., and the words 'want of notice' cover the case where no notice of any kind is ever given, and therefore would cover any period of time, within or beyond the sixty days men-

tioned in section 43-1202, I.C.A., and there is nothing in either statute to indicate that the exculpatory exceptions in section 43-1202, I.C.A., do not likewise operate as to 'delay' in not giving the notice as soon as practicable, within sixty days, or beyond the sixty-day period, and is to be considered in connection with either knowledge or lack of prejudice.

"This court has previously twice held that the burden of showing lack of prejudice beyond the sixty-day period is on the employee. Bodah v. Coeur D'Alene Mill Co., 44 Idaho 680, 258 P. 1079; Wilson v. Standard Oil Co., 47 Idaho 208, 273 P. 758. If notice is given as soon as practicable and within sixty days, no excuse is necessary, if not as soon as practicable, then even though within sixty days the employee must show lack of prejudice."

The Frost case was followed and approved in Long v. Brown, supra [64 Idaho 39, 128 P.2d 756] wherein the court said:

"The rule is well established that where it is shown that the employer has not been prejudiced by delay or want of notice, compensation may be awarded. Bodah v. Coeur D'Alene Mill Co., 44 Idaho 680, 258 P. 1079; Frost v. Idaho Gold Dredging Co., 54 Idaho 312, 31 P.2d 270; Arneson v. Robinson, 59 Idaho 223, 82 P.2d 249. Lack of prejudice having been affirmatively shown by sufficient, substantial and competent evidence, it follows that the finding of the Board 'that it has not been shown that the employer * * * has not been

**104**

prejudiced by such delay or want of notice' cannot be sustained as a matter of law."

In Moody v. State Highway Department, 56 Idaho, 21, 28, 48 P.2d 1108, 1110, this court held that, under sec. 43-1202, I.C.A., claim for compensation could not be maintained unless claim was made therefor within one year after "the date of the accident". The question there decided was the necessity for making the claim within one year and not the question of delay in serving notice of the accident.

■ It should be borne in mind that, under the statute and the rule announced in the foregoing cases, the giving of notice to the employer in cases where the time limit in giving the notice is in question, whether "within or beyond the sixty days" period, Frost v. Idaho Gold Dredging Co., 54 Idaho 312, 315, 31 P.2d 270, the *burden is on the claimant to satisfactorily show that the employer was not prejudiced* by the delay. See, also, Woodbury v. Frank B. Arata Fruit Co., 64 Idaho 227, 237, 130 P.2d 870; Lawson v. Wallace & Keeney, 202 App.Div. 435, 195 N.Y.S. 673, 677; Boylan v. City of Philadelphia & Reading Coal & Iron Co., 92 Pa.Super. 562, 564; United States Fidelity & Guaranty Co. v. Industrial Acc. Comm., 84 Cal.App. 226, 257 P. 895, 897.

The order of the Board should be affirmed, and it is so ordered.

GIVENS and HOLDEN, JJ., concur.

BUDGE and MILLER, JJ., concur in the judgment.