373 P.2d 551

**William H. FINDLEY, Employee, Claimant-Appellant,**

**v.**

**Albert FLANIGAN, Grant Adams, and John F. Baker, co-partners, d.b.a. A & B Cedar Company, Employer, and Argonaut Insurance Company, Surety, Defendants-Respondents.**

**No. 9130.**

Supreme Court of Idaho.

July 27, 1962.

J. H. Felton, Lewiston, for claimant-appellant.

John W. Barrett, Moffatt & Thomas, Boise, for defendants-respondents.

SMITH, Chief Justice.

Claimant-appellant is hereinafter designated as claimant. Respondent employer is hereinafter sometimes referred to as the Company, and the Industrial Accident Board as the Board.

The crucial issues involved on this appeal are whether claimant timely notified his statutory employer, respondent A & B Cedar Company; or whether such employer had timely knowledge of an accident which occurred on December 2, 1960, and

of claimant's resultant industrial injury, and whether the Company's rights were prejudiced. The Board, having resolved the issues against claimant, denied him compensation. Appellant's assignments of error require a review of the evidence to determine whether it is sufficient to sustain the Board's determination.

Claimant Findley followed logging since 1945 until about three years prior to the time of hearing herein; during the three-year period last mentioned he was a logging contractor, conducting his own business, with his own equipment. Occasionally he hired out as a "caterpillar" operator.

A & B Cedar Company is a partnership having no equipment except as necessary to manufacture shakes. It does not own logging equipment. Prior to the events of this case, the Company had neither owned nor leased any source of timber. It bought shake bolts in the open market for cash on delivery to its mill.

In September, 1960, at one McCoy's solicitation the Company purchased for $220 certain standing timber which would yield both shakes and cedar posts. McCoy, having the requisite equipment, agreed to relieve the Company of the woods operation and hauling.

The Company's inducement for the agreement was the expectation of receiving upwards to 20 cords of shake bolts from its investment of $220 and furnishing a $100 bond incident to the transaction; the Company actually received 17½ cords which at the open market price were worth $568.75. McCoy's inducement for the agreement was his expectation of obtaining 20,000 to 30,000 cedar posts; the actual yield was about 10,000 posts.

During the late fall of 1960 McCoy entered the timber area with his equipment and four employees, and commenced the timber operations. Later, about December 1, 1960, McCoy hired claimant as a member of his crew to build a skid road and haul the shake bolts. Claimant furnished his own equipment, a "Caterpillar" tractor equipped with a blade, for constructing the roads, and his pickup truck for hauling the shake bolts.

The evening of December 2, 1960, after having worked on the road, claimant left the timber area, intending to go to his home, driving his own pickup truck loaded with shake bolts for delivery to the Company's mill at Stites. When about 20 to 25 miles from the timber area, and 40 to 45 miles from his home, his pickup truck ran off the road, down an embankment into a pile of loose dirt. Claimant had slipped down between the steering wheel and the door, when the truck came to a sudden stop. He drove the truck back onto the road, and the remaining distance over partially improved and partially unimproved roads to his home. He had difficulty getting out of

the pickup, experiencing a feeling of sprain in his back. He remained at home the next few days; then he visited a physician in Lewiston, where he was hospitalized until December 28, 1960, then he was transported by ambulance to a hospital in Spokane. Examinations showed that he suffered extensive arthritic changes in his lumbar and dorsal spine. An operation performed revealed a bony ridge on the upper sacrum and the lower ridge of the fifth lumbar vertebra, with some fragmented disc material beneath a nerve root in that area.

Claimant incurred medical and hospital expenses, part of which were paid by his own private insurance carrier. He also suffered a period of total temporary disability for work and a degree of partial permanent disability. The Board apportioned one-half of the medical expenses, total temporary disability and partial permanent disability to the accidental industrial injury and one-half to pre-existing infirmity.

Claimant made claim for compensation against respondent A & B Cedar Company, and its compensation surety. His Notice of Injury and Claim for Compensation is dated February 25, 1961, and was filed with the Board March 1, 1961. He claimed to be a direct employee of the Company. He did not make claim for compensation against Gene McCoy.

The Board, upon hearing the matter, found inter alia that at the time of his industrial injury claimant's direct employer was Gene McCoy; that Gene McCoy was an independent contractor of respondent A & B Cedar Company; that the Company was the statutory employer; that claimant had failed to give timely notice to the statutory employer against which he asserted his claim; that the Company did not have timely knowledge of claimant's accident and injury, and that the Company was prejudiced by such delay or want of notice. The Board entered an order denying compensation to claimant. He perfected an appeal from the order.

Claimant's specifications, claiming error committed by the Board, necessitate a review of the evidence as it relates to: (1), relationships existing between the parties, i. e., claimant, McCoy and respondent Company at the time of the accident; (2), whether respondent Company as employer, statutory or otherwise, had timely notice or knowledge of the accident and injury, and (3) whether the Company as such employer was prejudiced by delay or want of notice.

*Relationship Between McCoy and Claimant.*

Claimant had no direct contractual relations with respondent Company, nor had he talked with any of its partners. His dealings and agreement relative to the services of himself and his equipment, and pursuant to which he performed the serv-

ices, were with McCoy, who testified that claimant was one of his (McCoy's) crew in the timber operations. McCoy expected to pay his crew out of the proceeds of sale of cedar posts, claimant to be paid on a percentage basis.

Claimant, like McCoy, was a logging contractor, and generally hired as a contractor; but here the evidence shows without dispute that he was hired as a member of McCoy's crew. Claimant expected to realize some $40 to $50 a day for hire of his equipment, and additionally the going wage for a caterpillar operator.

Claimant had never done any logging work for respondent Company. He knew that the Company operated only the shake mill at Stites, near the vicinity of Kooskia, where he lived, and had never engaged in any logging work. His testimony shows that he knew that the Company and its operations were of recent origin. In operating his equipment on jobs, claimant reported the source of his income to be from his own business.

The evidence is ample to support the finding of the Board that McCoy was claimant's direct employer.

*Relationship Between McCoy and Respondent Company.*

The evidence shows that McCoy was a logging contractor who owned his own logging equipment, hiring and paying his own crew of employees. Respondent Company during the relatively short space of its existence had operated only its shake mill at Stites. It had no logging equipment and had never engaged in logging operations. The situs of its operations was solely and only at its shake mill. It purchased shake bolts on the open market. It bought a small stand of timber at the instance of McCoy, who agreed to relieve the Company of all woods operations and to deliver the shake bolts to the Company's shake mill, in consideration that he, McCoy, should receive all the cedar posts which the timber produced.

Clearly the Company did not, and never intended to exercise any right of control whatever over McCoy as to the manner in which he should perform the timber operations. The Company was interested only in a result, i. e., delivery of the shake bolts to its shake mill in whatever cordage the timber should produce. Under such arrangement the relationship of principal and independent contractor existed between the Company and McCoy. Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020; Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884; Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

Again, the evidence clearly supports the Board's finding that the relationship which

existed between respondent Company and McCoy as to this timber operation was that of principal and independent contractor.

*Relationship Between Claimant and Respondent Company.*

Admittedly, respondent Company, at the time of claimant's accident and injury, was an employer subject to the provisions of the workmen's compensation law. Its contractor was McCoy, and claimant was an employee of the contractor. It thus follows, as found by the Board, that respondent Company was claimant's statutory employer, pursuant to I.C. § 72–811, which reads:

"An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 72–801 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident. This section shall be in force as to all contracts made subsequent to March 15, 1921."

I.C. § 72–811 affords to an employee of a contractor or of a subcontractor under a contractor, the remedy of seeking compensation against the principal as the statutory employer, in addition to the remedy of proceeding against the contractor, or subcontractor as the direct employer. Here claimant elected to pursue his remedy in the premises against respondent Company, as the statutory employer; but his right so to do was subject to whatever defenses the law afforded to the employer.

Respondent Company, as such employer, advanced the general defense that claimant failed to state a claim upon which relief could be granted; and particularly contended that respondent Company did not have timely notice or knowledge, i. e., as soon as practicable but not later than sixty days after its happening, of the accident and injury, and that claimant did not afford the Company or its surety opportunity to provide claimant reasonable medical and kindred services; resultant prejudice being implicit in such defenses. The applicable sections of Idaho Code read as follows:

"72–402. Notice of injury and claim for compensation.—*No proceedings under*

*der this act for compensation* for any injury *shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable but not later than sixty days after the happening thereof,* * * *."

(Emphasis supplied.)

"72–404. Giving of notice and making of claim.—Any notice under this act shall be given to the employer, or, if the employer be a partnership, then to any one of the partners. * * *"

"72–405. Sufficiency of notice.—A notice given under the provisions of section 72–402 shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place, nature or cause of the injury, or otherwise, unless it is shown that the employer was in fact misled to his injury thereby. *Want of notice or delay in giving notice shall not be a bar* to proceedings under this act *if it be shown that the employer,* or his agent or representative, *had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice.*" (Emphasis supplied.)

"72–307. Medical attendance.—*The employer shall provide for an injured employee* such *reasonable* medical, surgical or other *attendance or treatment,* nurse and hospital service, medicine, crutches and apparatus, *as may be required* or be requested *by the employee immediately after an injury, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.* * * *" (Emphasis supplied).

*The Issues of Notice and of Knowledge.*

After the occurrence of the accident, the evening of December 2, 1960, claimant drove some 40 miles to his home in the vicinity of Kooskia, and went to bed, staying there until December 6, 1960. On that day he and his wife drove to Lewiston, picking up McCoy; on the way claimant told McCoy about the happening of December 2nd. At Lewiston, he related it to his family physician, Dr. Baldeck, stating that while driving home in his pickup he ran into a gulch or gap in the road where there were no warning flares; such is set forth in Dr. Baldeck's report of June 10, 1961, "on W. H. Findley, Kooskia, Idaho, who is self-employed," shown as an exhibit in the record.

Claimant did not relate to Dr. Baldeck that the accident occurred while he was at work for an employer. The doctor, after testifying he did not know it was a compensation case, stated, "I thought it was a private case * * * I assumed he was

self-employed as he had been before." The doctor did not remember who conveyed the information to him that a workman's compensation claim was involved, but the record shows it was not before March 20, 1961, nor until some time after the operative procedure and hospitalization of claimant in Spokane.

In the meantime, Dr. Baldeck hospitalized claimant in Lewiston until December 28, 1960, and then referred him to specialists in Spokane, where he was again hospitalized and an operation performed. Upon returning to Lewiston, claimant received aftercare. Dr. Baldeck and the Spokane physicians made reports to Findley's private insurance carrier, General Insurance Company of America, which paid substantial amounts on account of claimant's medical and kindred expenses incurred.

The circumstances surrounding the making of claimant's claim for compensation, dated February 25, 1961, and filed with the Board March 1, 1961, directed against respondent Company, are as follows:

McCoy stated that a day or two after claimant's accident he met Mrs. Findley in Kooskia and she stated that her husband "was shooken up" and that she thought he would go to a doctor. McCoy then stated he called Grangeville and talked to Mr. Baker, a partner of respondent Company, and "he said he would send the papers down." His further statements appear to the effect, "I think I called him [Mr. Baker] right there while Mrs. Findley was there." He then stated he thought he called Baker at the mill [which is at Stites], and then he thought he called him at Grangeville at his house and a woman answered the phone and said Baker would be in for dinner in a few minutes. Asked if he phoned Baker later, he said, "I am pretty sure. It was the house." He stated Baker said he would send the papers down and "I think it was probably three or four days before the papers came through the mail." Then he stated, "He either sent them to me or to Mr. Findley."

The Board pointed to McCoy's testimony as to the alleged date of the phone call, i. e., a day or two after the accident, as entirely unreliable, because McCoy stated as a result of the call he received by mail from the local office of the insurance company within two or three days, the claim blanks for making the claim, by which aspect of the testimony, the Board pointed out, McCoy unwittingly fixed the date of the call with some degree of accuracy, and particularly when the claim blanks were obtained.

The Board then pointed to the time when any partner of respondent Company had information or knowledge of any accident, which was when Mr. Baker received a telephone call late in February, 1961, Mr. Baker's testimony being:

"Q. * * * Mr. Baker, when is the first time that you heard of the accident of Mr. Findley?

"A. * * * Late February when Mr. Findley called me one night and said he had had an accident a couple of months before and that he had went to McCoy to get some redress and McCoy had referred him on to us and said that he was working—or that we were responsible for him.

"Q. Did he say when he had contacted Mr. McCoy?

"A. No, he said—the implication was that he had gone to him that day."

Mr. Baker's attention then was directed to claimant's Notice of Injury and Claim for Compensation, filed with the Board March 1, 1961, and was asked if this had ever been submitted to him or had he seen it before the time of the hearing, and he testified:

"A. Yes, I believe Al [Albert Flanigan, a partner] showed me a copy of it that he had sent."

Baker then testified:

"A. As soon as I heard about an accident, I called him [Flanigan] the same night and reported it and he, in the next day or so, took care of it. He takes care of all of the paper work."

Mr. Flanigan's testimony then appears:

"Q. * * * when was the first that you heard of Mr. Findley's alleged accident?

"A. In the latter part of February.

"Q. How did you gain this information?

"A. John Baker called me and told me he had received a message from Mr. Findley."

Mr. Flanigan then stated he had not received a call from anyone else regarding the accident.

The Board then found (on the foregoing testimony) that Baker received two telephone calls, one from Findley and one from McCoy, both within a relatively short time before Findley actually received the claim blanks.

The Board then made its ultimate findings on both the aspect of written notice of the accident to respondent Company and concerning knowledge imparted to the Company or any of its partners. It found that claimant failed to give written notice of any accident to the Company until February 25, 1961, 85 days after the accident. It further found that the first knowledge of the accident that the Company or any of its partners had was not earlier than the week preceding February 25, 1961. Nor is there any evidence showing or tend-

ing to show any reason for delay in the giving of notice, or why it was impracticable at any time within 60 days after the happening of the accident to have given notice. I.C., § 72-402, 72-404, 72-405.

The evidence, though somewhat conflicting, is competent and substantial and clearly supports those findings of the Board.

The findings of the Industrial Accident Board in a compensation proceeding when supported by competent, substantial though conflicting evidence will not be disturbed by the Supreme Court on appeal. I.C., § 72-609; Idaho Const., Art. 5, § 9; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089; Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024.

*The Issue of Prejudice.*

The record affirmatively shows, by reason of lack of timely notice and knowledge of the accident on the part of respondent Company or any partner, that neither the Company nor its surety was afforded opportunity to investigate the alleged accident and injury, nor to afford claimant, if an injured employee, such reasonable medical, surgical and attendant treatment, hospitalization and kindred services as required, or requested by him immediately after the injury and for a reasonable time thereafter, which right is specifically accorded to an employer by the provisions of I.C., § 72-307. It is only when the employer fails or refuses to provide such treatment, that the injured employee may do so at the expense of the employer. I.C., § 72-307; Totton v. Long Lake Lumber Co., 61 Idaho 74, 97 P.2d 596; Epperson v. Texas-Owyhee Mining & Development Co., 63 Idaho 251, 118 P.2d 745; Myers v. Industrial Accident Commission, 191 Cal. 673, 218 P. 11; Horn v. Elm Branch Coal Co., 141 Kan. 518, 41 P.2d 751; Anno. 7 A.L.R. 545.

Notice must be sufficient to apprise the employer of any accident arising out of and in the course of employment causing the personal injury. I.C., § 72-402; Ansbaugh v. Potlatch Forests, Inc., 80 Idaho 515, 334 P.2d 442. The requirement that notice of an accident be given to an employer "is to give the employer or someone on his behalf timely opportunity to make an investigation of the accident and surrounding circumstances to avoid payment of an unjust claim." Long v. Brown, 64 Idaho 39, 128 P.2d 754.

In the Ansbaugh case the court specifically further ruled that failure of a workman who seeks compensation for an industrial injury to give notice as soon as practicable, but not later than 60 days after the happening thereof, unless it be shown that the employer had knowledge of the accident, or has not been prejudiced by de-

lay or want of notice, shall be a bar to proceedings for compensation, citing I.C., § 72-405.

The Industrial Accident Board, after finding that claimant failed to give any written notice to respondent company until 85 days after the accident and that the Company had no knowledge of any industrial accident involving claimant until not earlier than a week preceding February 25, 1961, then found and ruled:

> "* * * It is affirmatively shown in the record that the defendants were prejudiced by such delay, particularly with respect to their right to designate claimant's attending physician or physicians. Prior to February 18, 1961, claimant had been confined in hospitals in Lewiston, Idaho, and Spokane, Washington, from December 6, 1960, to January 15, 1961, had undergone surgical treatment while in the Spokane hospital, and subsequently had been under continuous after-care by the Lewiston physician. All of such medical, surgical, hospital and kindred treatment was obtained by claimant on his own initiative without notice to, demand upon, knowledge or authorization of the defendants or any of them."

Again, such finding and ruling is supported by undisputed, competent and substantial evidence. In Ansbaugh v. Potlatch Forests, Inc., 80 Idaho 515, 523, 334 P.2d 442, 447, this Court further ruled:

> "The burden of proof is on a claimant who has not given, or who has delayed giving, notice of the accident, to show that no prejudice resulted to the employer on account of such want of or delay in, giving notice. Claimant's failure to discharge the statutory obligation of proving that the appellants [employer and surety] were not prejudiced by the failure to give notice or that they had knowledge of an accident is a complete bar to an award of compensation. Bodah v. Coeur D'Alene Mill Co., 44 Idaho 680, 258 P. 1079; Wilson v. Standard Oil Co., 47 Idaho 208, 273 P. 758; Frost v. Idaho Gold Dredging Co., 54 Idaho 312, 31 P.2d 270; Long v. Brown, 64 Idaho 39, 128 P.2d 754; Lescinski v. Potlatch Forests, 67 Idaho 98, 170 P.2d 605."

The order of the Industrial Accident Board denying compensation is affirmed. No costs allowed.

TAYLOR, McQUADE and McFADDEN, JJ., concur.

KNUDSON, J., concurs in the conclusion reached.