547 P.2d 1130

James H. TROUTNER, Claimant-Appellant,

v.

TRAFFIC CONTROL COMPANY, Employer, and Argonaut Northwest Insurance Company, Surety, Defendants-Respondents.

No. 11903.

Supreme Court of Idaho.

March 31, 1976.

Glenn A. Coughlan, of Coughlan, Imhoff & Lynch, Boise, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

BAKES, Justice.

This is an appeal from an order of the Industrial Commission dismissing the claimant James H. Troutner's request for attorney fees incurred in the processing of his workmen's compensation claim. The motion was made pursuant to I.C. § 72–804, which reads:

"72–804. Attorney's fees—Punitive costs in certain cases.—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission."

Troutner was injured on May 5, 1972, while in the employ of Traffic Control Company, Inc., when a gust of wind blew a traffic sign onto his back. A compensation agreement between the claimant and Argonaut Insurance Company, surety for the employer Traffic Control Company, Inc., awarding Troutner temporary total disability and permanent partial disability benefits was approved by the Industrial Accident Board (predecessor to the Industrial Commission) in January, 1974. During the ensuing year, Troutner was able to work, but not full time, as a general laborer. In late 1974, his back condition worsened, and on January 2, 1975, he contacted the attorney who had handled his original claim before the Industrial Accident Board. The attorney called the Argonaut Insurance Company, and a claims examiner agreed that Troutner should be examined by the orthopedic surgeon who had treated Troutner after the accident.

As a result of an examination of Troutner on January 6, the doctor recommended that the claimant submit to a myelogram, and depending on the results, undergo surgery. The tests were scheduled for January 21, with possible surgery scheduled for January 22, 1975. This information was relayed by Troutner's attorney to Argonaut, at which time the claims examiner stated that the surety would have to obtain a statement from the claimant relating to his activities

during the year 1974, and also would wait for a medical report from the examining physician. The Argonaut claims investigator was not able to meet with the claimant to obtain his statement until January 21, prior to Troutner's admission into the hospital for tests. The information received by the claims investigator at this meeting was inconclusive, according to the surety, because allegedly Troutner was unable to recall specific dates of employment and his answers were vague. Troutner gave the investigator the names of four people for whom he had worked in the previous year, but did not inform the investigator how to contact them.

The results of the myelogram performed on Troutner on January 22, 1975, indicated that surgery was necessary, and it was scheduled for the following morning. When contacted for authorization for the scheduled surgery, the claims examiner at Argonaut Insurance indicated that the insurance company could not authorize the surgery, since its investigation was incomplete and it had not yet received a report from the examining physician. The latter problem was caused by a misunderstanding in the physician's office, as they were not aware that this was a workmen's compensation claim for which a report must be prepared. Because Troutner was not able to pay for the scheduled surgery himself, the surgery was cancelled and he was discharged from the hospital.

In an effort to expedite the handling of his claim, Troutner's attorney instituted proceedings before the Industrial Commission, seeking a modification of award and requesting that the time for hearing be shortened. After several procedural difficulties concerning the setting of the hearing and subpoenaing the surety's claims examiner, the Industrial Commission set the hearing date for February 12. On February 11, however, a settlement was reached and Argonaut agreed to authorize the surgery for Troutner.

In the application for modification of award filed on January 30, Troutner requested that the Industrial Commission award him attorney fees, because the surety unreasonably contested the claim and neglected and refused to pay the compensation, citing I.C. § 72–804 as grounds for an award of attorney fees. During settlement negotiations, the parties were unable to agree on the attorney fees issue. A hearing was held before the Industrial Commission limited to that subject. The Commission concluded that Argonaut had not unreasonably contested reopening the claim, nor did the surety neglect or refuse, within a reasonable time after receipt of the claim, to pay Mr. Troutner compensation. The Commission ordered the claimant's motion for attorney fees to be dismissed with prejudice. Troutner has appealed.

Appellant's primary contention before this Court is that the record does not support the findings and conclusion of the Industrial Commission that the surety acted reasonably, and he attacks the failure of the Commission to make certain findings of fact which, Troutner alleges, would have supported a conclusion that the insurance company had neglected and unreasonably delayed in its determination of his claim.

It is not the function of this Court to substitute its view of the facts for the findings of fact made by the Industrial Commission, when such findings are supported by substantial evidence. Idaho Constitution, Art. 5, § 9; I.C. §§ 72–724, 732; *Christensen v. Calico Construction Co.,* 97 Idaho 327, 543 P.2d 1167 (1975). The record in this case indicates that on January 22, 1975, Argonaut Insurance had not been able to complete its investigation of Troutner's activities of the previous year to determine whether he had been injured while in other employment, nor had it received a report from the treating physician. Without this information, the surety could not be certain that it was bound to provide the surgical treatment to Troutner.

**528**

The record supports the Industrial Commission's opinion that the reasons Argonaut was not in a position to authorize surgery on January 22, 1975, were, for the most part, not the fault of the surety. Troutner himself had been unable to provide specific information concerning his activities of the previous year, and the misunderstanding at the physician's office was not discovered until January 22. Further, there was a misunderstanding between the surety and the claimant regarding who was obligated to obtain a physician's report.

■ Our recent decision in *Christensen v. Calico Construction Co., supra,* does not alter or diminish the right of the employer or surety to investigate the claim before consenting to be obligated for the expense, under penalty of being assessed attorney fees if they do not. In the *Christensen* case this Court stated:

> "The language in our earlier cases, . . . requiring not only notice to the employer or surety, but in addition *consent* from them to obtain additional or different medical treatment, appears to be an unwarranted requirement not justified by the statute." 97 Idaho at 329, 543 P.2d at 1169.

By that statement, we meant that liability under the statute does not turn on whether or not the employer or surety has consented to or authorized the treatment; rather that liability is based upon notice by the employee and a subsequent determination that the claim was the result of an accident in covered employment and that the expenses claimed are reasonable. The above quoted language from the *Christensen* case was not intended to deprive the employer or surety of the opportunity to investigate the claim in order to assure itself that it was obligated by I.C. § 72–432 to provide the treatment.

■ In this case one year had elapsed since Argonaut had entered into the prior compensation agreement with the claimant, and claimant had been employed at other jobs during the intervening period. It was quite possible that Troutner's current complaints were caused by some intervening and unrelated occurrence during that time. The surety had a right to investigate such possibilities before becoming bound on the claim. *Kennedy v. Evergreen Logging Co.,* 97 Idaho 270, 543 P.2d 495 (1975); *Findley v. Flanigan,* 84 Idaho 473, 373 P.2d 551 (1962); *Long v. Brown,* 64 Idaho 39, 128 P.2d 754 (1942). However, under the language from *Christensen* quoted above, if Troutner had remained in the hospital on January 22, and gone ahead with surgery the following day despite the refusal of the surety to authorize it, Argonaut Insurance would have been liable for those medical and surgical expenses because they were subsequently found to have been connected with his prior covered employment (albeit, by stipulation), and they apparently were reasonably incurred in the treatment of his injury.

■ In light of the foregoing discussion, the conclusion of the Industrial Commission that Argonaut Insurance had not neglected or unreasonably delayed in its determination of Troutner's claim is supported by the record and will not be disturbed on appeal. Attorney fees are not granted to a claimant as a matter of right under the Idaho workmen's compensation law, but may be recovered only under the circumstances set forth in I.C. § 72–804. The decision that grounds exist for awarding a claimant attorney fees is a factual determination which rests with the Industrial Commission. *Mayo v. Safeway Stores, Inc.,* 93 Idaho 161, 457 P.2d 400 (1969); *Wilson v. Gardner Associated, Inc.,* 91 Idaho 496, 426 P.2d 567 (1967). The conclusion of the Industrial Commission that no grounds existed for allowing attorney fees in this case is supported by substantial evidence and will not be set aside on appeal. Idaho Constitution, Art. 5, § 9; I.C. §§ 72–724, 732. Appellant's motion for attorney fees on appeal is denied.

Affirmed. Costs to respondents.

McFADDEN and DONALDSON, JJ., and SCOGGIN, D. J., concur.

SHEPARD, Justice (dissenting).

I disagree with the conclusion of the majority that the record supports the findings and decision of the Industrial Commission and hence, I dissent. Claimant here sustained a compensable injury while employed by Traffic Control Company in 1972 and the surety entered into an agreement with claimant awarding him temporary total disability and permanent partial disability and also paid all medical costs. Those costs were based on voluminous reports furnished the surety by the attending physician. The record (including answers to interrogatories of the surety) demonstrates that claimant following the accident was unable to and had no employment other than the performance of what might be characterized "odd jobs." The claimant did not earn enough money in 1974 to require him to pay any income tax.

It is undisputed that by January 2, 1975, claimant was experiencing considerable difficulty with the same back problem which had resulted from the industrial accident. Claimant's attorney on that day called the office of the surety and secured permission for him to be examined by the same physician which had almost continually treated him following the industrial accident and until November of 1973. On January 7, 1975, claimant's attorney advised the surety that the physician had determined that claimant should be admitted to the hospital on 21 January 1975 for the performance of a myelogram and depending upon the results, claimant should submit to surgery on the following day. Claimant's attorney requested the authorization of the surety therefor which was denied. That denial was based upon the lack of medical information and claimant's employment record during the year 1974.

The myelogram procedure was performed on claimant on January 22, 1975, and the results thereof indicated the necessity for additional surgery and it was scheduled for the following morning of January 23. Surety was again contacted for authorization for that scheduled surgery but again it was denied since its "investigation" was incomplete and no information had been received from the examining physician. Thereafter, claimant was discharged from the hospital without the surgery and the proceedings before the Industrial Commission ensued as set forth in the majority opinion.

The record demonstrates the activities of the surety during the various time intervals at question herein. Surety had knowledge as of January 2 that claimant would be examined by the same physician from which surety had received voluminous reports regarding claimant in the past. On January 8, surety was aware that the physician had examined claimant and that claimant would require hospitalization on January 21 and possible surgery on January 23. During that period of time surety made no attempt whatsoever to contact the physician and determine his findings. The written report of the physician was made under date of January 21, 1975. Surety was aware prior to January 22 that claimant had worked part time for four employers during the year 1974. Prior to January 22, surety made no attempt to contact the brother of the claimant who was one of those employers. As to the other three, surety's investigator was asked:

"Q. How much time would you say that you spent with respect to efforts to locate these people? (employers of claimant)

A. Are you talking about the time?

Q. Prior to the 22nd.

A. Prior to the 22nd?

Q. Of January.

A. Very little time. Only the time it took to discover that some of the people were not listed in the phone book and did not have telephones.

Q. A few minutes, then?

A. Certainly."

**530**

Insofar as the cooperation of the claimant in assisting the surety to locate his past employers, the investigator of the surety stated:

"Q. Mr. Manuel, did you ask Mr. Troutner of the addresses of these people when you took his statement?

A. I don't remember if I did or not, to be perfectly honest.

Q. Is there any reason why you couldn't have asked him?

A. Absolutely none."

When the investigator was asked if he was able to contact the previous employers of the claimant following the proceedings in February, he answered:

"I reached Mr. Mason, I also talked to Mr. Troutner. Helen talked to Mr. Allen and I believe neither of us to date has been able to contact Mr. Stoddard."

I agree with that language of the majority opinion which concludes that since claimant had some employment record, however sparse, between November 1973 and January 1975 a defense could conceivably exist which the surety might desire to assert. Under the circumstances of this case which indicate the need for emergency medical treatment I cannot believe that surety was entitled to sit on its hands and do nothing. It admittedly had notice as early as January 2 of claimant's medical difficulties. It authorized medical examination by the same physician which had previously treated claimant and from which the surety had received voluminous reports. The surety was aware of the imminent hospitalization and possible surgery. A simple telephone call to the office of the physician would have produced the report which would in part at least have indicated the existence or non-existence of a defense. Given the circumstances, I cannot agree that the surety's inaction was reasonable. I find the surety's conduct of its "investigation" when it admittedly knew of a time deadline for surgery to be likewise unreasonable. The previous and long existing

relationship between the claimant, the surety and the physician, is, in my judgment, a further factor in demonstrating the unreasonableness of surety's conduct.

The majority opinion suggests that if claimant had remained in the hospital and himself paid for the surgery, the surety nevertheless would have been liable. I am sure that is small comfort to the claimant in light of his financial condition and the fact that the hospital discharged him without the required surgery because of his inability to pay.