811 P.2d 843

**Petra E. QUINTERO,
Claimant–Respondent,**

v.

**PILLSBURY COMPANY, Employer,
and Travelers Indemnity Company,
Surety, Defendants–Appellants.**

No. 18755.

Supreme Court of Idaho,
Twin Falls, March 1991 Term.

May 15, 1991.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-appellants. Glenna M. Christensen argued.

Goicoechea Law Offices, Chartered, Idaho Falls, for claimant-respondent. Michael R. McBride argued.

McDEVITT, Justice.

Petra Quintero ("Quintero") was employed by the appellant, Pillsbury Company ("Pillsbury"), as a sanitation worker. On November 21, 1985, she suffered an on-the-job accident that injured her back and required treatment at the Idaho Falls Regional Medical Center Emergency Room. The treating physician diagnosed Quintero's problem as a probable mild back strain.

On December 13, 1985, Quintero was examined by Dr. Hume, an orthopedic surgeon. Quintero was much better and she returned to work on December 14, 1985. Ten (10) months later, on October 17, 1986, Quintero returned to the medical center complaining of lower back pain and leg pain.

On January 5, 1987, Quintero again visited Dr. Hume. Quintero reported that she did not feel well and that she was experiencing leg pains. In October of 1987, Quintero visited Dr. VanGenderen, an associate of Dr. Hume, again complaining of back and leg pain. An Electromyogram was performed on October 22, 1987. Everything appeared normal, but a slight irritation of the lower back was diagnosed. Dr. VanGenderen again examined Quintero and referred her to a human performance institute for a work hardening program. Dr. VanGenderen released Quintero from work beginning November 9, 1987, through March 7, 1988, to allow her to participate in the work hardening program.

Quintero returned to work on March 27, 1988. Quintero then requested a referral from Dr. VanGenderen in order to seek treatment from Dr. Marano. Dr. VanGenderen gave Quintero the requested referral. Dr. Marano was unable to help alleviate Quintero's pain. Pillsbury objected to Quintero receiving treatment from Dr. Marano and refused to pay for his services.

In the fall of 1988, Quintero, on the advice of her attorney, visited Dr. Whitenack. After several diagnostic visits, Dr. Whitenack determined that Quintero was a prime candidate for his pain clinic. In order to participate in this pain clinic, Quintero needed a release from work. Dr. Whitenack gave Quintero a note to give to her employer when she asked for time off to participate in the pain clinic. Quintero delivered the note to her employer and informed her employer of her intent to undertake the program at the clinic. Pillsbury gave Quintero the requested time off to participate in the clinic, but refused to pay for Dr. Whitenack's services.

After returning to work from the pain clinic, Quintero moved to another job within Pillsbury. Because of Pillsbury's refusal to pay Doctors Marano and Whitenack, Quintero sought an administrative hearing. The Hearing Commissioner found that both Dr. Marano's and Dr. Whitenack's services were compensable and ordered Pillsbury to pay for their services. From that order, Pillsbury appeals. We affirm.

In their brief, the defendants state the issue on appeal as follows:

Can a claimant's attorney send his client to a physician, without a referral from the client's treating physician, without any indication from the treating physician that the client requires additional medical care, without notice to the employer or surety, or without a petition to the Industrial Commission for a change of physicians, and thereby obligate the employer and surety under Section 72–432, Idaho Code, for payment of medical expenses related to the physician's treatment?

It is apparent from the statement of the issues on appeal and the argument in their brief, that the defendants take exception to the fact that Quintero sought treatment from Dr. Whitenack on the advice of her attorney. Defendants assert that only the treating physician can refer an employee to another physician for treatment. Without a referral, the employee would be liable for any expenses incurred in seeking other necessary medical treatment. Defendants characterize this as an employer controlled system as opposed to an employee controlled one.

Idaho Code § 72–432 governs the procedure by which an employee can seek medical treatment. Both the employer and the employee must follow the legislative man-

dated requirements of this section. This statute provides several different avenues that an injured employee may use to seek necessary medical treatment without a referral from the treating physician, to be paid at the employer's expense. Pertinent to our discussion is I.C. § 72–432(4) which states:

> The employee upon reasonable grounds, may petition the commission for a change of physician to be provided by the employer, however, the employee must give notice to the employer or surety of his request for a change of physicians to afford the employer the opportunity to fulfill his obligations under this section. If proper notice is not given, the employer shall not be obligated to pay for the services obtained. Nothing in this section shall limit the attending physician from arranging for consultation, referral or specialized care without permission of the employer.

Thus, this statute sets forth a two-step process by which an employee may seek treatment from another physician without a referral from the attending physician. First, the employee must ask the employer or its surety to authorize a change of physicians; upon the denial of that request, the employee can petition the Industrial Commission for permission to change physicians.

The main issue we confront on this appeal is whether the claimant complied with the statutory requirements in obtaining treatment from Dr. Whitenack. Our scope of review is limited to determining whether the Industrial Commission's findings of fact are based upon competent, although conflicting, evidence. *Johnson v. Amalgamated Sugar Co.*, 108 Idaho 765, 702 P.2d 803 (1985). We will set aside the Commission's findings only if we determine that the record is devoid of any competent evidence to support them. I.C. § 72–732(1); *Paulson v. Idaho Forest Indust.*, 99 Idaho 896, 591 P.2d 143 (1979).

In determining that Quintero complied with the requirements of I.C. § 72–432(4) the Industrial Commission made the following finding of fact:

## VIII.

Claimant's visits to Dr. Whitenack and his pain clinic present a different set of facts. Claimant's lawyer suggested she go to a pain clinic in order to help her reduce the pain she had been experiencing for three years. Claimant saw Dr. Whitenack on September 20, 1988, October 28, 1988 and again on November 15, 1988. It was not until after the third visit, Claimant asked Mr. Robert Spanbauer, Safety Coordinator for Defendant Employer, in November 1988 to enroll in Dr. Whitenack's pain clinic. Mr. Spanbauer then contacted Diane Evans, Senior Claims Examiner, GAB Business Services, Inc., who refused payment, ostensibly because there was no referral from a treating physician. Because it is true there was no physician referral, the Commission must determine whether, alternatively, Claimant gave notice to her Employer or Surety of her request for medical services. We find that Claimant's request to Mr. Spanbauer and his subsequent contact with GAB both constituted sufficient notice to Defendants, Employer and Surety. Further we find the treatment was reasonable.

Dr. Whitenack is a pain control specialist and, in light of Claimant's well-documented long-term chronic back pain history, had a specially relevant program to offer. In fact, it was only through the professionals at the pain clinic that Claimant finally was able to understand her pain and how to control it. Again, there is no dispute the treatment received was within standard medical practice or that the charges were fair and reasonable. Defendants, consequently, shall be obligated to pay for the services of Dr. Whitenack rendered only after November 15, 1988, the time she gave notice to her Employer, and for treatment at the pain clinic rendered under Whitenack's supervision.

This finding was based partially upon the testimony of Robert Spanbauer. Spanbauer described his duties at Pillsbury as working "with injured people helping get

them back to work, coordinate with the insurance company and the injured people and sometimes with doctors to get all the paperwork done so we can get everybody taken care of." When questioned by defendants' attorney, Spanbauer testified:

Q. In the fall of 1988 did you have a conversation with Miss Quintero about Dr. Whitenack's program?

A. Yes, I did.

Q. Could you describe that conversation?

A. She came to us with a note from Dr. Whitenack about this pain clinic. The note said that she needed to be off work for a four-week period to participate in this clinic. This was the first I knew of it.

I called Diane, the adjuster at GAB, to find out a little more about this, to see if it was something authorized by the doctors or just what the—you know, how it came to be. Diane said it was not a referral from the treating physician and as such would not be covered.

Q. Did Miss Evans indicate to you that she had knowledge of the referral?

A. No. I think that was the first she knew of it also.

Q. When you told her?

A. Yes.

Q. Was then Miss Quintero given time off?

A. Yes. When we—after I talked to Diane at GAB I got a hold of our personnel supervisor, Leona Nelson, to come and talk with Petra also so that we could arrange to possibly get it paid through her Teamsters' insurance. I don't know an awful lot about the ends [sic] and outs of the Teamsters' insurance, I don't work with that at all, so I called Leona to come and help explain things to Petra.

We explained to her that workman's comp would not pay because it was not a referral from her treating physician. If she wanted to pursue this, you know, we could arrange for a leave of absence and she could arrange for payment through her own insurance, through her Teamsters' insurance.

We hold that the Commission's finding determining that Quintero complied with the requirements of I.C. § 72–432(4) is supported by substantial, competent evidence. We will not disturb this finding on appeal.

■ Pillsbury further argues that Quintero failed to timely petition the Commission for a change in physicians. Pillsbury argues that the petition must come before the employee changes physicians or concurrently with the employer's notification of the desire to change physicians. We disagree. The statute does not specify when the petition to the Commission is to be made. All that the statute requires is that the employee must first give the employer the opportunity to authorize the change in physicians and if that request is denied then the employee can petition the Commission. While an employee risks being liable for the costs of unauthorized treatments undertaken without Commission or employer approval, nothing in the statute prohibits petitioning for approval of the Commission after the treatment is completed if the employee can show compliance with the statute. The Industrial Commission did not err in finding that Quintero was in compliance with the statutory requirements.

■ Quintero requests attorney fees pursuant to I.C. § 12–123. Idaho Code § 12–123 is a civil statute and does not apply to workers' compensation proceedings. *Kinney v. Tupperware Co.*, 117 Idaho 765, 792 P.2d 330 (1990). In addition, the Commission specifically declined to award attorney fees pursuant to I.C. § 72–804. The decision to award fees pursuant to this section rests with the Industrial Commission. Other than in clear cases we defer to the judgment of the Commission. *Troutner v. Traffic Control Co.*, 97 Idaho 525, 547 P.2d 1130 (1976). The Commission is well experienced in determining what circumstances warrant the imposition of attorney fees. Respondent's request for attorney fees is denied.

The decision of the Industrial Commission is affirmed.

Costs to respondent.

BISTLINE, JOHNSON and BOYLE, JJ., and HURLBUTT, J. Pro Tem., concur.