873 P.2d 836

Ronald Raymond HOYE, Jr., Claimant–
Respondent–Cross–Appellant,

v.

DAW FOREST PRODUCTS, INC., employ-
er and Liberty Northwest Insurance
Corporation, surety, Defendants–Appel-
lants–Cross–Respondents,

and

State of Idaho Industrial Special
Indemnity Fund, Defendant.

No. 20267.

Supreme Court of Idaho,
Boise, January 1994 Term.

March 4, 1994.

Rehearing Denied June 3, 1994.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for appellants-cross-respondents. Robert L. Berlin argued.

Louis Garbrecht, Coeur d' Alene, for respondent-cross-appellant.

JOHNSON, Justice.

This is a workers' compensation case. We conclude that there is substantial and competent evidence to support the Industrial Commission's following findings: (1) the worker is totally and permanently disabled under the odd-lot doctrine; and (2) the worker's preexisting physical impairment did not constitute a subjective hindrance to employment, one of the elements for apportioning some of the liability to the Industrial Special Indemnity Fund (ISIF). We also conclude that the Commission did not abuse its discretion in rejecting the worker's request for attorney fees pursuant to I.C. § 72–804.

**I.**

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Ronald Raymond Hoye, Jr. was born with a foreshortening and webbing of the fingers known as brachysyndactylism.

In approximately 1973, Hoye began working for Bunker Hill Mining Co. (Bunker Hill), where he worked as a manual laborer. In 1978, Hoye experienced painful and numb hands caused by his work at Bunker Hill. In addition, Hoye had difficulty sleeping at night, holding a steering wheel, and writing. Hoye's condition was diagnosed as carpal tunnel syndrome, and was related to his heavy physical labor at Bunker Hill. Due to this condition, Hoye took slightly more than a year off work to let his body recover. After he returned to work at Bunker Hill, he had mild problems with his hands, but nothing serious and nothing that impeded his performance.

During Hoye's one-year hiatus from Bunker Hill, he enrolled at a school for naturopathic physicians in an attempt to change careers. Hoye dropped out of the school after a few months because, among other things, he had difficulty taking notes and would have had difficulty practicing naturopathic medicine due to the condition of his hands.

In 1982, after Bunker Hill shut down, Hoye found a job with Diamond International, a lumber company, which subsequently became DAW Forest Products, Inc. (DAW).

Hoye performed a number of jobs with DAW, culminating in his position as a dry kiln transfer operator, which put great stress on Hoye's arms and hands.

In August and September 1987, the dry kiln operation underwent retooling. As a result of the retooling, the dry kiln process operated at about twice the speed, and Hoye handled about twice the lumber he did before. In addition, the tool used to handle the lumber, the stinger, was modified. After the retooling, in September, October, and November 1987, Hoye felt increased pain, numbness, weakness, and tingling in his hands. His hands were often cold, discolored, and debilitatingly painful. They also cramped and became immobile with use.

Hoye saw a number of physicians beginning in October 1987. He told these physicians he had experienced intermittent pain in his hands for a number of years. He also revealed that the pain had, in late 1987, suddenly become much worse and reached the point where he had difficulty sleeping, could not drive for any distance, and was forced to abandon all his hobbies. Hoye testified that at times the pain was so bad that he could only sit and do nothing. He also kept his house at seventy-eight degrees and slept with an electric blanket to ease his symptoms, which are aggravated by cold.

Hoye consulted an internist and rheumatologist, who concluded that Hoye suffered from thoracic outlet syndrome. This physician also diagnosed Hoye as possibly suffering from Raynaud's phenomenon and advised Hoye to take time off work. Hoye's last day of work at DAW was December 14, 1987.

Several other physicians who examined Hoye said that Hoye did not suffer from thoracic outlet syndrome. There was also conflicting testimony whether Hoye had some degree of Raynaud's phenomenon. Nearly every physician who examined Hoye, even the internist and rheumatologist, linked Hoye's present condition with both his congenital hand deformity and his physically demanding occupation.

Hoye filed a workers' compensation claim. The Commission found that Hoye had acquired an occupational disease, thoracic outlet syndrome, and retained jurisdiction on the issues of permanent physical impairment, permanent partial disability, and medical expenses.

DAW and Liberty Northwest Insurance Corporation, DAW's surety, filed a motion for reconsideration requesting that the Commission apportion the liability for Hoye's benefits between the thoracic outlet syndrome and any other condition. The Commission denied the motion.

The Commission then granted the motion of DAW and its surety to join ISIF as a party.

After a further hearing, the Commission determined that Hoye was totally and permanently disabled under the odd-lot doctrine, based on the finding that it would be futile for him to seek further employment. The Commission also determined that the liability for total and permanent disability was not subject to apportionment pursuant to I.C. § 72-332 because Hoye's brachysyndactylism was a non-medical factor rather than a preexisting physical impairment which subjectively hindered Hoye in his employment. The Commission further concluded that DAW and its surety were liable for reimbursement of all Hoye's reasonable medical expenses resulting from his occupational disease. Finally, the Commission ordered DAW and its surety to pay Hoye attorney fees of $500.00 because DAW and its surety had required Hoye to travel to Portland, Oregon, for medical examinations and had unreasonably failed to advance Hoye proper expense allowances.

Hoye requested that the Commission reconsider the portion of its decision denying Hoye attorney fees. The Commission denied this request.

DAW and its surety appealed. Hoye cross-appealed.

## II.

**THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT, PURSUANT TO THE ODD–LOT DOCTRINE, HOYE WAS TOTALLY AND PERMANENTLY DISABLED.**

DAW and its surety assert that there is no substantial and competent evidence to sup-

port the Commission's finding of total permanent disability based on the odd-lot doctrine and that the Commission's decision is based upon an erroneous application of the odd-lot doctrine as set forth in *Huerta v. School Dist. No. 431*, 116 Idaho 43, 48–49, 773 P.2d 1130, 1135–36 (1989). We disagree.

In the recent case of *Nelson v. David L. Hill Logging*, 124 Idaho 855, 865 P.2d 946 (1993), the Court stated:

Whether Nelson established a prima facie case that he was an odd-lot worker is a factual question for the Commission to answer. The Commission's findings on this issue will be sustained if supported by substantial and competent evidence. *Huerta v. School Dist. No. 431*, 116 Idaho 43, 47, 773 P.2d 1130, 1134 (1989).

To qualify for total disability under the odd-lot doctrine, an employee must prove the unavailability of suitable work. *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 153, 795 P.2d 312, 315 (1990). The employee may prove a prima facie case of odd-lot status by one of three methods: (1) by showing what other types of employment the employee has attempted, (2) by showing that the employee, or vocational counselors, employment agencies, or the Job Service on behalf of the employee, have searched for other work for the employee, and that other work was not available, or (3) any efforts of the employee to find suitable employment would have been futile.

*Id.*

*Nelson*, 124 Idaho at 857, 865 P.2d at 948.

■ Once a claimant has satisfied the burden of proving a prima facie case of odd-lot status, the burden shifts to the employer and surety, or to ISIF, to prove the claimant's employability. *Huerta*, 116 Idaho at 47, 773 P.2d at 1134. To meet this burden, there must be proof of "an actual job within a reasonable distance from [the worker's] home which [the worker] is able to perform or for which [the worker] can be trained." *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 407, 565 P.2d 1360, 1364 (1977).

■ We conclude there is substantial and competent evidence to support the Commission's decision that Hoye established a prima facie case of odd-lot status. There was substantial and competent evidence to support the Commission's decision under either of two different methods specified in *Huerta*: (1) that Hoye attempted to find other types of employment and could not; or (2) that any effort by Hoye to find suitable employment would be futile.

The Commission properly applied *Huerta* in reaching its decision.

Although DAW and its surety presented evidence of a vocational consultant who said Hoye qualified for certain types of jobs, there is substantial and competent evidence to support the Commission's finding that DAW and its surety did not rebut the prima facie case of odd-lot status by proving that there was an actual job within a reasonable distance of Hoye's home which he was able or could be trained to perform and for which he had a reasonable opportunity of being hired.

## III.

**THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT HOYE'S PREEXISTING CONGENITAL CONDITION DID NOT CONSTITUTE A SUBJECTIVE HINDRANCE TO EMPLOYMENT.**

■ DAW and its surety assert that the Commission should have apportioned Hoye's total and permanent disability between Hoye's preexisting congenital condition and any occupational disease Hoye acquired while at DAW. We disagree.

I.C. § 72–332 permits apportionment to the ISIF of a portion of liability for workers' compensation benefits where a preexisting permanent physical impairment combines with the effects of a subsequent injury or occupational disease to render a worker totally and permanently disabled. In *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 795 P.2d 312 (1990), the Court stated:

There are four elements of a prima facie case for apportioning liability for a total permanent disability under I.C. § 72–332:

1. Whether there was a preexisting impairment.
2. Whether the impairment was manifest.
3. Whether the impairment was a subjective hindrance.
4. Whether the impairment in any way combines in causing total permanent disability.

*Id.* at 155, 795 P.2d at 317.

■ We first note that the Commission was incorrect in ruling that Hoye's brachysyndactylism was a non-medical factor, rather than a preexisting physical impairment. The basic definition of permanent impairment is "any anatomic or functional abnormality or loss." I.C. § 72–422. In *Hartley v. Miller–Stephan,* 107 Idaho 688, 690, 692 P.2d 332, 334 (1984), the Court ruled that this definition is incorporated by reference into I.C. § 72–332. Certainly, Hoye's brachysyndactylism is a preexisting physical impairment within this definition. The Commission's characterization is harmless in this case, however, because the Commission did evaluate whether the condition constituted a subjective hindrance, one of the elements of a prima facie case for apportionment pursuant to I.C. § 72–332.

■ The correct test to determine whether an impairment was a subjective hindrance is "whether or not the preexisting condition constituted a hindrance or obstacle to employment for the particular claimant." *Archer v. Bonners Ferry Datsun,* 117 Idaho 166, 171–72, 786 P.2d 557, 562–63 (1990). The Commission found that Hoye's congenital condition of brachysyndactylism did not constitute a subjective hindrance to Hoye's employment. The Commission listed the following evidence to support its finding:

1. Hoye surpassed other workers who did not have a similar physical condition.
2. Hoye worked far more overtime than any of the employees listed in Hoye's answers to interrogatories.
3. Hoye received favorable references from his supervisors and established an exemplary work record.
4. Hoye's attendance was always good.
5. Hoye stayed overtime whenever requested and helped develop the stinger

tool which contributed to a substantial increase in production.
6. Hoye's supervisor at Bunker Hill said that he had not found a job Hoye could not handle.
7. When Hoye was released to return to work at Bunker Hill, he had no physical restrictions.
8. Hoye passed the physical examination and was hired promptly by DAW.
9. Hoye's supervisor said that Hoye was punctual, dependable, and would assume responsibility beyond his job requirements.

This evidence is in the record and is substantial and competent evidence to support the Commission's finding that Hoye's brachysyndactylism did not constitute a subjective hindrance to Hoye's employment.

## IV.

**THE COMMISSION DID NOT ABUSE ITS DISCRETION IN DENYING HOYE ATTORNEY FEES AFTER THE SURETY REFUSED TO PAY HOYE'S MEDICAL EXPENSES RELATING TO HIS OCCUPATIONAL DISEASE.**

■ Hoye asserts that the Commission should have awarded him attorney fees because of the surety's unreasonable refusal to pay the medical expenses arising from his occupational disease. We conclude that there was substantial and competent evidence to support the Commission's finding that the surety's refusal was not unreasonable and that the Commission did not abuse its discretion in denying the award of attorney fees.

Hoye argues that the surety was apprised of Hoye's medical treatment, was given copies of all pertinent medical records, and, because the Commission in 1989 found Hoye to have an occupational disease, should have paid Hoye's medical bills. Hoye contends that the Commission should have found that the surety was aware of Hoye's outstanding medical bills.

I.C. § 72–804 "provides that a claimant may recover attorney fees before any court if

the employer or surety neglected or refused within a reasonable time to pay to the injured employee compensation provided by law." *Harrison v. Osco Drug, Inc.,* 116 Idaho 470, 473, 776 P.2d 1189, 1192 (1989).

In *Trapp v. Sagle Volunteer Fire Dept.,* 122 Idaho 655, 837 P.2d 781 (1992), the Court considered the standard of review we employ in reviewing a decision of the Commission whether to award attorney fees pursuant to I.C. § 72–804:

> This Court held in *Quintero v. Pillsbury Co.,* 119 Idaho 918, 811 P.2d 843 (1991), that:
>
> > The decision to award fees pursuant to [72–804] rests with the Industrial Commission. Other than in clear cases we defer to the judgment of the Industrial Commission. [Citation omitted.] The Commission is well experienced in determining what circumstances warrant the imposition of attorney fees.
>
> 119 Idaho at 921, 811 P.2d at 846. In *Troutner v. Traffic Control Co.,* 97 Idaho 525, 547 P.2d 1130 (1976), we held that:
>
> > The decision that grounds exist for awarding a claimant attorney fees is a factual determination which rests with the Industrial Commission. [Citations omitted.] The conclusion of the Industrial Commission that no grounds existed for allowing attorney fees in this case is supported by substantial evidence and will not be set aside on appeal.
>
> 97 Idaho at 528, 547 P.2d at 1133.

122 Idaho at 656–57, 837 P.2d at 782–83.

In *Trapp,* the Court concluded its review of the Commission's decision denying the claimant's request for attorney fees pursuant to I.C. § 72–804:

> The Commission "is well experienced in determining what circumstances warrant the imposition of attorney fees," and its determination, which required the weighing of the evidence and the balancing of factors, is supported by the record. Accordingly, we find no abuse of discretion and affirm the Commission's decision.

122 Idaho at 657, 837 P.2d at 783. (Citations omitted.) (Footnote omitted.)

In this case, the Commission found that the surety did not act unreasonably under the circumstances in failing to pay or in delaying payment of the medical bills in question because Hoye did not sufficiently notify the surety by submitting or identifying bills Hoye wanted paid. The Commission excluded an exhibit containing letters from Hoye's attorney to the surety's attorney requesting payment for medical services because the letters did not specify the medical bills for which payment was requested and did not link those bills to Hoye's occupational disease. Even the one letter that specified a bill, the Commission found, was sent to the surety's attorney only two and one-half months before the hearing, which the Commission said was not long enough for the surety to have delayed unreasonably in paying it. The Commission concluded that the evidence at the hearing did not show that the surety was given specific notice of the bills and the treatment giving rise to them.

We conclude that there is substantial and competent evidence to support the Commission's finding that the surety was not properly notified of Hoye's medical expenses and that the Commission did not abuse its discretion in ruling that the surety did not act unreasonably in failing to pay these expenses.

## V.

## CONCLUSION.

We affirm the Commission's decisions: (1) awarding Hoye compensation for total and permanent disability, (2) declining to apportion any of the liability for this compensation to ISIF, and (3) denying Hoye attorney fees for the failure of the surety to pay medical expenses.

We award Hoye costs, but not attorney fees, on appeal.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.