908 P.2d 1235

**Marvin J. Wagar, Claimant,**

v.

**ASARCO, INC., Employer, Self–Insured, Appellant,**

and

**INDUSTRIAL SPECIAL INDEMNITY FUND, Respondent.**

No. 21622.

Supreme Court of Idaho,
Coeur d'Alene, October 1995 Term.

Jan. 4, 1996.

Hull, Branstetter & Simpson, Wallace, for appellant. Michael K. Branstetter argued.

Alan G. Lance, Attorney General, Boise; and Kelso & Irwin, Coeur d'Alene, for respondent. Jon Irwin argued.

McDEVITT, Chief Justice.

This is a worker's compensation case. The primary issue presented in this appeal is whether there was sufficient evidence to support the Industrial Commission's (the Commission) finding that ASARCO, Inc. (ASARCO) failed to show sufficient evidence to place liability on the Industrial Special Indemnity Fund (I.S.I.F.) for an employee's alleged permanent physical impairment, pursuant to I.C. § 72–332. ASARCO has not challenged the Commission's determination, that Marvin J. Wagar (Wagar), an employee of ASARCO, was rendered totally and permanently disabled in the course of employment. We affirm the decision of the Commission.

## I.

### FACTS AND PRIOR PROCEEDINGS

Wagar had worked as an underground miner for most of his life, until he was in-

jured while working in an ASARCO mine. Wagar began working for ASARCO in June 1987, after a physical examination determined he was in "excellent health." In May 1988, Wagar complained to his family physician that he was experiencing neck pains. Wagar's neck problems dramatically improved after he had surgery in June 1988. In September 1988, Wagar's rehabilitation specialist, Dr. Vivian Moise, released Wagar to return to work as an underground laborer, without specific lifting restrictions.

Upon returning to work, Wagar initially experienced some weakness and difficulty in tilting his head back, but was eventually able to perform his work satisfactorily. Although Wagar requested assistance from other miners to lift heavy items, he likewise assisted other miners, in a customary manner, when they were performing heavy work. Wagar's supervisor testified that Wagar performed his duties as an underground miner as well as any of the other miners and never knew of Wagar being physically unable to perform his duties as a miner, after Wagar's 1988 surgery and before Wagar's subsequent accident. The general foreman of ASARCO's mine confirmed the supervisor's testimony, testifying that he never knew of any report indicating Wagar could not physically perform his duties as an underground miner.

In March 1990, ASARCO terminated Wagar's employment, stating that ASARCO would like to re-employ Wagar in the future. After passing another physical examination in June 1990, Wagar was re-employed by ASARCO as an underground miner.

On November 13, 1990, while working in ASARCO's mine, Wagar's head was caught between a timber and a hoist, causing a crushing injury to his head. Wagar was hospitalized immediately and was diagnosed as suffering a complex basilar skull fracture and lacerations. After his November 13, 1990 accident, Wagar experienced hearing loss, some facial paralysis, weakness in his arms and legs, constant ringing in his ears, and constant headaches.

In January 1991, Wagar returned to working as an underground miner for ASARCO. Due to an increasing amount of pain and weakness that was interfering with his ability to work, Wagar terminated his employment with ASARCO in November 1991.

Dr. Ronald Vincent, who also performed Wagar's June 1988 surgery, examined Wagar after his November 13, 1990 accident and found that Wagar was having problems with his balance and walking and was experiencing numbness in his hands. Dr. Vincent found Wagar had not experienced any other changes in his health since the June 1988 surgery. Dr. Vincent suggested that Wagar had some aggravation of his 1988 condition or some residuals of his head injury. In either event, Dr. Vincent felt that Wagar's current problems were related to his November 13, 1990 head injury. Wagar's rehabilitation specialist, Dr. Moise, advised Wagar could not return to work and gave Wagar permanent lifting restrictions of no more than 25 pounds.

On September 25, 1992, ASARCO completed a separation notice for Wagar, due to a mine closure, which rated Wagar's physical condition as poor and stated that ASARCO would not like to re-employ Wagar.

After the November 13, 1990 accident, ASARCO paid Wagar total disability income benefits until October 25, 1993, when ASARCO began paying Wagar for only permanent partial disability benefits. Wagar filed a worker's compensation complaint with the Commission claiming he was entitled to benefits for his total and permanent disability.

On March 22, 1994, a hearing was held before a referee, pursuant to I.C. § 72–506, in order to determine whether Wagar was totally and permanently disabled and if so, whether any liability for Wagar's benefits should have been apportioned to the I.S.I.F. The referee found that based on the record and medical evidence, Wagar was totally and permanently disabled and that ASARCO had failed to sustain its burden of proving that any of ASARCO's liability to Wagar for total permanent disability should have been apportioned to the I.S.I.F. Consequently, the referee dismissed the I.S.I.F. as a party to the proceedings.

On July 6, 1994, the Commission adopted the referee's findings of fact and conclusions

of law. The Commission ordered that Wagar was entitled to recover from ASARCO income benefits for total permanent disability effective as of October 26, 1993, and granted ASARCO credit for any amounts advanced to Wagar for permanent physical impairment or permanent partial disability.

ASARCO moved for reconsideration of the Commission's July 6, 1994 Order, which the Commission denied on August 31, 1994. AS-ARCO appeals the Commission's decision that the I.S.I.F. should not be apportioned liability, pursuant to I.C. § 72–332.

## II.

### STANDARD OF REVIEW

■ The Commission's determination of disputed and conflicting facts and opinions of experts will be upheld if supported by substantial, competent evidence. *Lethrud v. State*, 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995); *Earl v. Swift & Co.*, 93 Idaho 546, 550, 467 P.2d 589, 593 (1970). Evidence is "substantial and competent" if a reasonable mind might accept such evidence as adequate to support a conclusion. *Reiher v. American Fine Foods*, 126 Idaho 58, 60, 878 P.2d 757, 759 (1994). It is a function of the Commission and not of this Court to determine the credibility of witnesses, the weight to be assigned testimony, and the reasonable inferences to be drawn from the record as a whole. *Earl*, 93 Idaho at 550, 467 P.2d at 593. A challenge to the Commission's application of a statute is a question of law. *Sprague v. Caldwell Transp., Inc.*, 116 Idaho 720, 722, 779 P.2d 395, 397 (1989). We exercise free review over questions of law. *Davaz v. Priest River Glass Company, Inc.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

## III.

### ANALYSIS

**A. THE COMMISSION'S FINDING THAT WAGAR'S PREVIOUS NECK INJURY WAS NOT A PERMANENT PHYSICAL IMPAIRMENT IS SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE.**

■ ASARCO argues that the Commission erred in finding that Wagar's pre-existing condition was not a subjective hindrance to his employment. ASARCO contends that the evidence was overwhelming that Wagar's 1988 cervical condition was of such a seriousness to constitute a hindrance or obstacle to employment. We disagree.

Idaho Code § 72–332 provides that if an employee has a "permanent physical impairment" from any cause or origin and incurs a subsequent injury arising out of and in the course of his employment, that combines with the permanent physical impairment, causing total and permanent disability, the I.S.I.F. will be apportioned liability by the Commission. I.C. § 72–332(1).

A "permanent physical impairment," as referred to in I.C. § 72–332(1), is defined as a permanent impairment (as defined in I.C. § 72–422) from an injury of such seriousness that it constitutes a hindrance or obstacle to obtaining employment or to obtaining reemployment if the claimant should become employed. I.C. § 72–332(2). A "permanent impairment" is "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation." I.C. § 72–422.

In *Langley v. State*, 126 Idaho 781, 890 P.2d 732 (1995), we stated that in order for a claimant to establish I.S.I.F. liability under I.C. § 72–332(1), a claimant must prove that prior to incurring an injury, he was suffering from a permanent physical impairment. *Id.* at 787, 890 P.2d at 738. In *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 795 P.2d 312 (1990), we set forth the four elements of a prima facie case for apportioning liability for a total and permanent disability under I.C. § 72–332; (1) whether there was a preexisting impairment, (2) whether the impairment was manifest, (3) whether the impairment was a subjective hindrance, and (4) whether the impairment in any way combines in causing total and permanent disability. *Id.* at 155–56, 795 P.2d at 317–18. In *Archer v. Bonners Ferry Datsun*, 117 Idaho 166, 786 P.2d 557 (1990), we set forth the test for

determining whether an impairment was a subjective hindrance to employment, such that it constituted a permanent physical impairment under I.C. § 72–332. *Id.* at 172, 786 P.2d at 563; *see also Langley,* 126 Idaho at 787, 890 P.2d at 738; *Hoye v. DAW Forest Prods., Inc.,* 125 Idaho 582, 586, 873 P.2d 836, 840 (1994). In *Archer,* we held that the correct test is "whether or not the pre-existing condition constituted a hindrance or obstacle to employment for the particular claimant." *Archer,* 117 Idaho at 172, 786 P.2d at 563; *see Langley,* 126 Idaho at 788, 890 P.2d at 739; *Hoye,* 125 Idaho at 586, 873 P.2d at 840. Under the *Archer* test the Court is to consider, "evidence of the claimant's attitude toward the pre-existing condition, the claimant's medical condition before and after the injury for which compensation is sought, nonmedical factors concerning the claimant, as well as expert opinions and other evidence concerning the effect of the pre-existing condition on the claimant's employability...." *Archer,* 117 Idaho at 172, 786 P.2d at 563. Under the *Archer* test, the Commission weighs the evidence presented on the question of whether or not the pre-existing condition constituted a hindrance or obstacle to employment for the particular claimant. *Id.*

In concluding that none of Wagar's pre-existing conditions constituted a serious hindrance or obstacle to Wagar's employment, the Commission relied on the fact that after Wagar's 1988 surgery, Dr. Moise released him to return to his regular employment as an underground miner and laborer and, after a period of adjustment, he was able to work satisfactorily with only negligible difficulty. After Wagar's 1988 surgery, Wagar was released without restriction to return to work. Despite the fact that Wagar had some difficulty tilting his head back when it was necessary to work overhead and required assistance in lifting heavy items, the Commission also considered the fact that Wagar assisted other miners when they were performing heavy work in a customary manner. The testimony of Wagar's supervisor and ASARCO's general foreman indicated Wagar was always able to do his job, prior to his November 13, 1990 accident. While Dr. Vincent was not sure whether any of Wagar's symptoms were attributable to a recurrence of his 1988 condition, Dr. Vincent was sure that the physical problems Wagar experienced after his November 13, 1990 accident, were related to Wagar's head injury. There was substantial and competent evidence in the record to support the Commission's finding that Wagar did not experience any actual hindrances or obstacles when he resumed working in September of 1988.

Since we affirm the Commission's finding that Wagar was not suffering from a permanent physical impairment, we do not reach the appellant's argument that Wagar's permanent physical impairment and injuries from his November 13, 1990 accident, have combined with his 1988 neck problems, to result in Wagar becoming totally and permanently disabled or that Wagar's 1988 neck condition aggravated Wagar's injuries from his November 13, 1990 accident, causing Wagar to become totally and permanently disabled. I.C. § 72–332(1). If an employee does not have a "permanent physical impairment" as defined by I.C. § 72–332(2), the analysis under I.C. § 72–332 is concluded. I.C. § 72–332(1); *see Langley,* 126 Idaho at 787, 890 P.2d at 738. A party arguing the I.S.I.F. should be apportioned liability under I.C. § 72–332(1), bears the burden of proving that an employee was suffering from a permanent physical impairment. *Langley,* 126 Idaho at 787, 890 P.2d at 738; *see* I.C. § 72–332. ASARCO has not satisfied this burden. The Commission's finding that Wagar was not suffering from a permanent physical impairment, prior to his November 13, 1990 accident, is affirmed.

## B. THE I.S.I.F. IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL.

The I.S.I.F. claims ASARCO has unreasonably pursued this appeal and thus the I.S.I.F. is entitled to its reasonable attorney fees pursuant to I.C. § 72–804 and Idaho Appellate Rule 41. There are no Idaho appellate cases specifically considering whether

the I.S.I.F. may recover attorney fees under I.C. § 72–804. We do not address whether the I.S.I.F. may use I.C. § 72–804 to recover attorney fees in this case, based on our conclusion that ASARCO has not unreasonably pursued this appeal.

## IV.

## CONCLUSION

The Commission's finding that Wagar was not suffering from a permanent and physical impairment prior to his November 13, 1990 accident, is supported by substantial and competent evidence. Since ASARCO has failed to show that Wagar had a permanent and physical impairment prior to his November 13, 1990 accident, we affirm the Commission's decision to deny any apportionment of liability to the I.S.I.F., pursuant to I.C. § 72–332. Costs but no attorney fees are awarded against ASARCO.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.