65 P.3d 531

Wayne F. SEWARD, Claimant–
Respondent,

v.

PACIFIC HIDE & FUR DEPOT, Employer and Liberty Northwest Insurance Corporation, Surety, Defendants–Appellants.

No. 28282.

Supreme Court of Idaho,
Boise, January 2003 Term.

March 7, 2003.

Law Offices of Harmon & Harmon, Boise, for appellants. E. Scott Harmon argued.

Raymond W. Setzke Jr., Boise, for respondent.

KIDWELL, Justice

Pacific Hide & Fur Depot, Inc. (Pacific) and its surety, Liberty Mutual Insurance Company (Liberty), appeal from a decision of

the Idaho Industrial Commission (the Commission).

## I.

## FACTS AND PROCEDURAL BACKGROUND

On October 18, 2000, Wayne Seward (Seward) fell off a ladder and injured his back in the course and scope of his employment with Pacific. At Pacific's request, Seward saw Dr. Hill.

Dr. Hill referred Seward to Dr. Doerr, an orthopedic surgeon. Dr. Doerr ordered two MRIs for Seward. Neither MRI showed structural damage to Seward's back. Therefore, Dr. Doerr referred Seward to Dr. Cox, a physiatrist.

Dr. Cox noted that Seward had high "Waddell's findings"—symptoms for which no physiological basis exists. Consequently, Dr. Cox referred Seward to Dr. Calhoun, a psychologist. Dr. Calhoun found that no further medical treatment would help Seward unless he overcame his unfounded fears of pain and permanent injury. Thereafter, Seward returned to Dr. Cox. On March 13, 2001, Dr. Cox concluded that Seward had reached maximum medical improvement, needed no further care, and could return to work without limitation.

On January 15, 2001, Seward had filed a worker's compensation claim and served the claim upon Pacific and Liberty. Pacific admitted liability for, and paid, Seward temporary total disability (TTD) of $456.90 and medical expenses of $1,073.00 before his claim was filed.

In April 2001, without a referral, Seward saw Dr. Garber, an orthopedic surgeon. Dr. Garber treated Seward until July 5, 2001. The treatments included three epidural injections. On April 25, 2001, Dr. Garber began written correspondence with Liberty regarding Seward's condition.

At a hearing held on August 21, 2001, the parties disputed liability for the expenses Seward incurred in seeking treatment from Dr. Garber between April 9 and July 5, 2001, and whether Pacific owed Seward additional TTD benefits.

The Commission found for Seward regarding the expenses Seward incurred seeing Dr. Garber. In doing so, the Commission cited *Quintero v. Pillsbury* for the proposition that all I.C. § 72–432(4) "requires is that the employee must first give the employer the opportunity to authorize the change in physicians and if that request is denied then the employee can petition the Commission." 119 Idaho 918, 921, 811 P.2d 843, 846 (1991). The Commission held that in bringing a worker's compensation claim, Seward had appropriately "petitioned" pursuant to I.C. § 72–432(4).

Pacific moved for reconsideration on the ground that the Commission's reliance on *Quintero* was misplaced and that the claimant failed to follow I.C. § 72–432(4) and Judicial Rule of Procedure (J.R.P.) XX(E). In its order on reconsideration, the Commission found that "*Quintero* provides useful direction for the case at hand pointing out that a claimant is not required to maintain a strict chain of referral among various treating physicians in order for the treatment to be compensible." The Commission also found Seward "effectively petitioned the Commission by taking the case to hearing."

Pacific appealed the Commission's decision on the grounds that Seward failed to notify Pacific or Liberty of his request for a change of physician in accord with I.C. § 72–432(4) and J.R.P. XX.

## II.

## STANDARD OF REVIEW

■ This Court freely reviews the Commission's conclusions of law. *Hamilton ex rel. Hamilton v. Reeder Flying Servs.*, 135 Idaho 568, 569, 21 P.3d 890, 893 (2001) (citing *Taylor v. Soran Rest., Inc.*, 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998)).

## III.

## ANALYSIS

Pacific and Liberty argue that the 1997 amendments to I.C. § 72–432 require that an employee give *written* notice *prior* to visiting a physician outside of the chain of referral.

They contend the amendments also supercede this Court's holdings in *Quintero*. Seward, on the other hand, asserts that Pacific and Liberty had knowledge of Seward's request for a change of physician sufficient to satisfy the requirements of I.C. § 72–432(4).

**We Affirm The Commission's Finding That Pacific And Liberty Are Liable For Dr. Garber's Treatment Of Seward.**

**1. The Commission correctly interpreted I.C. § 72–432(4) and J.R.P. XX.**

█ Statutory interpretation begins with "the literal words of the statute, and this language should be given its plain, obvious, and rational meaning." *Jen–Rath Co. v. Kit Mfg. Co.*, 137 Idaho 330, 335, 48 P.3d 659, 664 (2002) (quoting *Williamson v. City of McCall (In re Williamson)*, 135 Idaho 452, 455, 19 P.3d 766, 769 (2001)).

█ In 1997, the legislature amended I.C. § 72–432. Prior to the amendment, the section stated:

> The employee upon reasonable grounds, may petition the commission for a change of physician to be provided by the employer, however, the employee must give notice to the employer or surety of his request for a change of physicians to afford the employer the opportunity to fulfill his obligations under this section. If proper notice is not given, the employer shall not be obligated to pay for the services obtained. Nothing in this section shall limit the attending physician from arranging for consultation, referral or specialized care without permission of the employer.

I.C. § 72–432(4) (1996). In 1997, the legislature amended I.C. § 72–432(4) and added the language now found in I.C. § 72–432(5). These sections presently state:

> (4)(a) The employee upon reasonable grounds, may petition the commission for a change of physician to be provided by the employer; however, the employee must give written notice to the employer or surety of the employee's request for a change of physicians to afford the employer the opportunity to fulfill its obligations under this section. If proper notice is not given, the employer shall not be obligated to pay for the services obtained. Nothing in this section shall limit the attending physician from arranging for consultation, referral or specialized care without permission of the employer. Upon receiving such written notice, the employer shall render its written decision on the claimant's request within fourteen (14) days. If any dispute arises over the issue of a request for change of physician, the industrial commission shall conduct an expedited hearing to determine whether or not the request for change of physician should be granted, and shall render a decision within fourteen (14) days after the filing of the response by the employer.
>
> (b) The industrial commission shall, no later than December 31, 1997, promulgate a rule for the expeditious handling of a petition for change of physician pursuant to this section. Nothing herein shall prevent the commission from making periodic amendments, as may become necessary, to any rule for a petition for change of physician.

The amendments to I.C. § 72–432(4) achieve the following: (1) require written notice to an employer or surety prior to petitioning the commission for a change of physician; (2) provide for an expedited hearing and decision; and (3) direct the Commission to promulgate rules for handling of petitions.

In accord with I.C. § 72–432(4)(b), the Commission promulgated J.R.P. XX. Under this rule, "notice" and "petition" are used synonymously. J.R.P. XX(A)(1). Rule XX(E) requires that a petition contain the names and addresses of the employee, employer, surety (if known), current physician, and prospective physician. J.R.P. XX(E)(1)(a)-(i). A petition should also state general information regarding the injury or disease, summary of medical treatment, reason for request, and available hearing dates within thirty days. The information "shall be in writing and submitted in a format substantially similar to the form provided in Rule XX, Form A." While J.R.P. XX(E) provides specific requirements for petitions, J.R.P. XX(I) states: "The above procedure *shall not be deemed exclusive*. An employee may pursue a change of physician through the

application for hearing process described in Idaho Code § 72–706." J.R.P. XX(I). The "claim for compensation" required by I.C. § 72–706 may serve as the pre-petition notice required by I.C. § 72–432. The Commission acted within its power in promulgating J.R.P. XX(I) because the procedures of I.C. § 72–706 "afford the employer the opportunity to fulfill its obligations under [section 72–432]" prior to the Commission taking any action.

Seward's claim for medical expenses incurred seeking care from Dr. Garber is a "claim" for purposes of I.C. § 72–706(1). The record shows that Seward's claim was made in writing and that it was served on both the employer and surety. While the claim was filed prior to Seward's visits to Dr. Garber, Liberty became aware of the care rendered by Dr. Garber through written correspondence with Dr. Garber prior to the hearing on Seward's claim. The knowledge that Seward sought treatment from Dr. Garber, in combination with the claim, granted Pacific and Liberty the opportunity to meet their obligations to pay expenses Seward incurred seeking treatment from Dr. Garber. Based on these and other facts in the record, the Commission found that Seward effectively petitioned the Commission for a change of physician. The appellants do not challenge the Commission's findings of fact on appeal.

Because the Commission properly applied I.C. § 72–432(4) and J.R.P. XX, and its findings of facts are not challenged on appeal, we affirm the Commission's decision.

**2. Neither I.C § 72–432(4) nor J.R.P. XX supercede the core holdings of Quintero.**

This Court assumes that the Legislature knew of existing precedent at the time it passed or amended a statute. *See State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999) (citing *City of Sandpoint v. Sandpoint Indep. Highway Dist.,* 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994)). When a statute is amended, however, "it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment." *Miller v. State,* 110 Idaho 298, 299, 715 P.2d 968, 969 (1986).

In *Quintero,* this Court applied the pre-1997 version of I.C. § 72–432(4), and J.R.P. XX was not promulgated. Inasmuch as *Quintero* stands for the proposition that I.C. § 72–432(4) does not require written notice, the 1997 amendment to I.C. § 72–432(4) supercedes it. Neither the 1997 amendments to I.C. § 72–432, nor J.R.P. XX, address the key holdings of *Quintero:* (1) lack of a referral is not fatal to an employee's claim for compensation, or reimbursement for, medical services; and (2) nothing in I.C. § 72–432 prohibits a post-treatment petition for a change of physician. 119 Idaho at 921–22, 811 P.2d at 846–47. Since neither the post-*Quintero* amendments to I.C. § 72–432 or J.R.P. XX address the holdings of *Quintero,* neither wholly supercede it.

## IV.

## CONCLUSION

The Commission has properly applied I.C. § 72–432 and promulgated J.R.P. XX. Neither the 1997 amendments to I.C. § 72–432, nor the promulgation of J.R.P. XX, supercede *Quintero.* Therefore, we affirm the Commission's decision. Costs are awarded to the respondent. No attorney fees were requested on appeal.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and EISMANN concur.